No. 23-1849

# In the United States Court of Appeals
## For the
## Fourth Circuit

In re: SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION AND TOURISM

In re: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION, 1:21-md-3010-PKC; and STATE OF TEXAS, et al. v. GOOGLE LLC, 1:21-cv-6841-PKC

---

SOUTH CAROLINA DEPARTMENT
OF PARKS, RECREATION AND TOURISM,

*Movant-Appellant,*

*v.*

GOOGLE LLC,

*Respondent-Appellee.*

---

On Appeal from the United States District Court
for the District of South Carolina

---

**BRIEF OF MOVANT-APPELLANT**

---

R. Walker Humphrey, II
**WILLOUGHBY HUMPHREY
& D'ANTONI, P.A.**
133 River Landing Drive, Suite 200
Charleston, South Carolina 29492
(843) 619-4426

Mitchell Willoughby
Margaret M. O'Shields
Hunter R. Pope
**WILLOUGHBY HUMPHREY
& D'ANTONI, P.A.**
930 Richland Street
Columbia, South Carolina 29201
(803) 252-3300

*Counsel for Movant-Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _____    Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)


_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    YES    NO


2.    Does party/amicus have any parent corporations?    YES    NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    YES    NO
      If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    YES    NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES    NO
        If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    YES    NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?             YES    NO
        If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____      Date: _____

Counsel for: _____

# TABLE OF CONTENTS

DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF ISSUES ................................................................. 2

STATEMENT OF THE CASE ............................................................ 2

SUMMARY OF ARGUMENT ........................................................... 6

STANDARD OF REVIEW ................................................................ 7

ARGUMENT ................................................................................... 7

I.   SCPRT's Eleventh Amendment Immunity from Suit in Federal Court Bars Google's Subpoena. .......................................................... 7

    A.   State immunity from suit in federal court is a structural feature of the U.S. Constitution. ................................................................ 8

    B.   Eleventh Amendment immunity shields states from federal court subpoenas. ............................................................................. 10

        1.   Binding precedent compels the conclusion that states are immune from federal court subpoenas. .................................... 10

        2.   Two hundred years of precedent otherwise confirms that states are immune from federal court subpoenas. ..................... 11

            a.   Subpoenas fall under the Supreme Court's long-standing definition of "suit" for Eleventh Amendment immunity. ........................................................................ 12

            b.   State, federal, and tribal sovereign immunity cases from other circuits establish that subpoenas to states are suits. ................................................................................ 14

            c.   The prevailing trend recognizes that states are immune from federal court subpoenas. ........................................... 16

II.   The South Carolina Attorney General Did Not Waive SCPRT's Immunity from Federal Court Subpoenas by Joining the Antitrust Case Against Google. ........................................................................ 20

    A.   Waiver of immunity by voluntarily appearing in federal court is narrowly tailored. ......................................................... 21

    B.   The Attorney General's antitrust and SCUTPA claims did not waive SCPRT's immunity from federal court subpoenas. ................. 24

        1.   The Attorney General does not represent SCPRT or have custody or control over SCPRT's records. .............................. 24

        2.   The Attorney General did not sue Google in a sovereign capacity. ..................................................................... 28

        3.   Google's subpoena falls outside the limited scope of one agency's waiver of another's immunity. .................................. 31

CONCLUSION ................................................................................ 33

STATEMENT ON ORAL ARGUMENT ............................................... 34

CERTIFICATE OF COMPLIANCE ..................................................... 35

ADDENDUM ................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.W. v. Jersey City Pub. Schs.*,
    341 F.3d 234 (3d Cir. 2003) ...............................................................23

*Alden v. Maine*,
    527 U.S. 706 (1999)...........................................................4, 8, 9, 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982).......................................................28, 29, 31

*Ali v. Carnegie Inst. of Wash.*,
    306 F.R.D. 20 (D.D.C. 2014).........................................................18, 19

*Allen v. Woodford*,
    544 F. Supp. 2d 1074 (E.D. Cal. 2008) ...........................................19

*Alltel Commc'ns, LLC v. DeJordy*,
    675 F.3d 1100 (10th Cir. 2012) ....................................7, 15, 17, 27

*Arecibo Cmty. Health Care, Inc. v. Puerto Rico*,
    270 F.3d 17 (1st Cir. 2001)...................................................23, 26

*Arista Records, LLC v. Does 1-14*,
    No. 7:08cv00205, 2008 WL 5350246
    (W.D. Va. Dec. 22, 2008) ...............................................................19

*AU Optronics Corp. v. South Carolina*,
    699 F.3d 385 (4th Cir. 2012) .........................................................31

*Ex parte Ayers*,
    123 U.S. 443 (1887)........................................................................13

*Barnes v. Black*,
    544 F.3d 807 (7th Cir. 2008) .........................................................17

*Belknap v. Schild*,
    161 U.S. 10 (1896)..........................................................................16

*Blatchford v. Native Vill. of Noatak & Circle Vill.*,
    501 U.S. 775 (1991)...........................................................................9

*Bonnett v. Harvest (U.S.) Holdings, Inc.*,
    741 F.3d 1155 (10th Cir. 2014) ..............................................*passim*

*Boron Oil Co. v. Downie*,
    873 F.2d 67 (4th Cir. 1989) .......................................................11, 15

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
    488 F. Supp. 3d 240 (D.S.C. 2020) ..........................................18, 19

*Christianson v. Colt Inds. Op. Corp*,
    486 U.S. 800 (1988).........................................................................29

*Cohens v. Virginia*,
    19 U.S. 264 (1821)...........................................................................12

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999)........................................................16, 22, 24, 26

*Dugan v. Rank*,
    372 U.S. 609 (1963).........................................................................11

*In re Elko Cnty. Grand Jury*,
    109 F.3d 554 (9th Cir. 1997) ..........................................................15

*Est. of Gonzalez v. Hickman*,
    466 F. Supp. 2d 1226 (E.D. Cal. 2006) ...........................................18

*Fed. Mar. Comm'n v. S.C. State Ports Auth.*,
    535 U.S. 743 (2002)..................................................................8, 9, 10

*Felix v. Cnty. of Nassau*,
    No. 21-CV-676 (JAM)(SIL), 2023 WL 5978189
    (E.D.N.Y. Sept. 12, 2023)...............................................................18

*Fin. Oversight & Mgmt. Bd. for Puerto Rico v.*
*Centro de Periodismo Investigativo, Inc.*,
    598 U.S. 339 (2023).........................................................................21

*In re Flonase Antitrust Litig.*,
    879 F.3d 61 (3d Cir. 2017) ..............................................................23

*Franchise Tax Bd. of Cal. v. Hyatt*,
  139 S. Ct. 1485 (2019) ............................................................8, 13

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) ........................................................................24

*Harter v. Vernon*,
  101 F.3d 334 (4th Cir. 1996) ...........................................................7

*Houston Bus. J., Inc. v. Off. of Comptroller of Currency*,
  86 F.3d 1208 (D.C. Cir. 1996) .......................................................15

*Jackson v. AFSCME Loc. 196*,
  No, 3:07CV0471 (JCH), 2008 WL 1848900
  (D. Conn. April 25, 2008) ...............................................................19

*Kadel v. N.C. State Health Plan for Tchrs. & State Emps.*,
  12 F.4th 422 (4th Cir. 2021), *as amended* (Dec. 2, 2021) ...........22, 24

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
  535 U.S. 613 (2002) ...........................................................22, 24, 33

*Laxalt v. McClatchy*,
  109 F.R.D. 632 (D. Nev. 1986) ......................................................19

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
  666 F.3d 244 (4th Cir. 2012) .........................................................21

*Lewis v. Clarke*,
  581 U.S. 155 (2017) ........................................................................16

*Litman v. George Mason Univ.*,
  186 F.3d 544 (4th Cir. 1999) .....................................................21, 22

*Maysonet-Robles v. Cabrero*,
  323 F.3d 43 (1st Cir. 2003) ............................................................23

*McGehee v. Neb. Dep't of Corr. Servs.*,
  968 F.3d 899 (8th Cir. 2020) .........................................................17

*Md. Stadium Auth. v. Ellerbe Becket Inc.*,
  407 F.3d 255 (4th Cir. 2005) .........................................................30

*In re Mo. Dep't of Nat. Res.*,
    105 F.3d 434 (8th Cir. 1997) ......................................................16, 19

*N.J. Dep't of Envtl. Protection v. Gloucester Envtl. Mgmt. Servs., Inc.*,
    923 F. Supp. 651 (D.N.J. 1995) ............................................................32

*Nat'l R.R. Passenger Corp. v. Roundtree Transp. & Rigging, Inc.*,
    896 F. Supp. 1204 (M.D. Fla. 1995)....................................................31

*New York v. Microsoft Corp.*,
    209 F. Supp. 2d 132 (D.D.C. 2002)......................................23, 29, 30

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
    No. 21-mc-65, 2023 WL 2467738
    (D.D.C. Mar. 7, 2023)..............................................................................1

*Oracle Am., Inc. v. Or. Health Ins. Exch. Corp.*,
    145 F. Supp. 3d 1018 (D. Or. 2015) ..............................................31, 33

*Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.)*,
    361 F.3d 760 (2d Cir. 2004) ..................................................................32

*Ott v. City of Milwaukee*,
    682 F.3d 552 (7th Cir. 2012) .................................................................17

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993)..................................................................................1

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)......................................................................9, 11, 13

*Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*,
    926 F.3d 97 (4th Cir. 2019) .....................................................................7

*Printz v. United States*,
    521 U.S. 898 (1997)................................................................................10

*Puerto Rico v. United States*,
    490 F.3d 50 (1st Cir. 2007).....................................................................15

*Russell v. Jones*,
    49 F.4th 507 (5th Cir. 2022) ..............................................7, 14, 15, 18

*Schlossberg v. Maryland*
*(In re Creative Goldsmiths of Washington*, *D.C., Inc.)*,
    119 F.3d 1140 (4th Cir. 1997) ...............................................23

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) .............................................................10

*Pennsylvania ex rel. Shapp v. Kleppe*,
    533 F.2d 668 (D.C. Cir. 1976) ......................................28, 29

*Sossamon v. Texas*,
    563 U.S. 277 (2011) ...........................................................22

*Stroud v. McIntosh*,
    722 F.3d 1294 (11th Cir. 2013) ..........................................22

*Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*,
    458 F.3d 1335 (Fed. Cir. 2006) ..........................................23

*Tenn. Student Assistance Corp. v. Hood*,
    541 U.S. 440 (2004) .............................................................8

*United States v. Cole*,
    537 F.3d 923 (8th Cir. 2008) .............................................17

*United States v. Univ. of Mass., Worcester*,
    167 F. Supp. 3d 221 (D. Mass. 2016) .................................19

*Va. Dep't of Corrs. v. Jordan*,
    921 F.3d 180 (4th Cir. 2019) ........................................10, 20

*Weston v. City Council of Charleston*,
    27 U.S. 449 (1829) .............................................................12

*Wilson v. Venture Fin. Grp., Inc.*,
    No. C09-5768BHS, 2010 WL 4512803
    (W.D. Wash. Nov. 2, 2010) ...............................................19

**State Cases**

*State ex rel. Condon v. Hodges*,
    562 S.E.2d 623 (S.C. 2002) .......................................25, 26, 28

*Condon v. State,*
    583 S.E.2d 430 (S.C. 2003) ...........................................................................25, 26

*Miccosukee Tribe of Indians of Fla. v. Bermudez,*
    92 So. 3d 232 (Fla. Ct. App. 2012) ....................................................................15

*Plowman v. Bagnal,*
    450 S.E.2d 36 (S.C. 1994) ...................................................................................30

*State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc.,*
    777 S.E.2d 176 (S.C. 2015) .................................................................................30

**Statutes**

15 U.S.C. §§ 1 and 2 .................................................................................................2

15 U.S.C. § 26 ..........................................................................................................2

S.C. Code Ann. § 1-7-40...........................................................................................26

S.C. Code Ann. § 1-30-10(A)(16) ............................................................................25

S.C. Code Ann. § 1-30-10(D) ..................................................................................25

S.C. Code Ann. §§ 30-4-10 to -165 ........................................................................27

S.C. Code Ann. § 30-4-40(1) ...................................................................................4

S.C. Code Ann. § 51-1-10(a) ...................................................................................25

**Other Authorities**

H.B. 3866 § 1, 125th Gen. Assemb., Reg. Sess. (2023) .................................3, 24, 26

9A Wright & Miller, *Federal Practice & Procedure* § 2451 (2d ed. 1995) ...........19

**Rules**

Fed. R. App. P. 4(a)(1)(A) .........................................................................................1

Fed. R. Civ. P. 26(b)(1)..............................................................................................19

Fed. R. Civ. P. 45 ......................................................................................................19

Fed. R. Civ. P. 45(d)(3)..............................................................................................1

Local Rule 34(a)............................................................................34

**Constitutional Provisions**

S.C. Const. art. IV, §§ 1, 3 .........................................................25

S.C. Const. art. VI, § 7 ................................................................25

S.C. Const. art. XV ......................................................................25

U.S. Const. amend. XI .................................................................9

U.S. Constitution..........................................................................8

## JURISDICTIONAL STATEMENT

Google LLC issued a federal court subpoena *duces tecum* to the South Carolina Department of Parks, Recreation and Tourism (SCPRT). JA 31–67. The subpoena commanded compliance in Columbia, South Carolina. JA 32. SCPRT moved to quash the subpoena in the District of South Carolina because the subpoena violates SCPRT's sovereign immunity from suit in federal court. JA 7–8. The district court had jurisdiction under Fed. R. Civ. P. 45(d)(3). *See In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, No. 21-mc-65, 2023 WL 2467738, at *2 n.2 (D.D.C. Mar. 7, 2023) ("Because the Subpoena ordered CSSP to comply in the District of Columbia, this Court may properly consider the instant motion [to quash].").

The district court issued its order denying SCPRT's claim of sovereign immunity on July 12, 2023. JA 158–165. SCPRT timely appealed to this Court on August 11, 2023. JA 166–167; *see* Fed. R. App. P. 4(a)(1)(A). This Court has jurisdiction under the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 147 (1993) ("States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity."); *Bonnett v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1157–59 (10th Cir. 2014) (holding the collateral order doctrine grants jurisdiction to review the denial of a motion to quash a subpoena which asserts sovereign immunity).

## STATEMENT OF ISSUES

Did the district court err in denying SCPRT's sovereign immunity from subpoenas issued by a federal court?

## STATEMENT OF THE CASE

Nine states led by Texas sued Google in the Eastern District of Texas for violating federal antitrust and related state laws through its online display ad business.[1] South Carolina, solely through its Attorney General, intervened as a plaintiff. JA 478–479. The state plaintiffs' causes of action fall into two categories: (1) Counts I–IV asserting violations of 15 U.S.C. §§ 1 and 2 (the Sherman Act) and seeking only injunctive relief pursuant 15 U.S.C. § 26 (the Clayton Act), and (2) Counts V and VI asserting violations of state antitrust and unfair competition laws. *See* JA 218–219, JA 232, JA 511. As brought by the South Carolina Attorney General, Claims V and VI seek injunctive relief, a civil penalty (not actual damages), and attorneys' fees and costs under the South Carolina Unfair Trade Practices Act (SCUTPA), S.C. Code Ann. §§ 39-5-10 to -180, in the name of the state based on "Google's acts or practices regarding South Carolina consumers." JA 431–432, JA

---

[1] *Texas v. Google, LLC* was transferred to the *In re Google Digital Advertising Antitrust Litigation* MDL in the Southern District of New York. Google issued its subpoena to SCPRT out of the Southern District of New York. The Judicial Panel on Multidistrict Litigation thereafter remanded the case to the Eastern District of Texas under amendments to the MDL statute. JA 671–675. The Second Circuit recently denied Google's petition for a writ of mandamus to reverse the JPML's decision. JA 676. The underlying case therefore will return to the Texas court.

445–446. The Attorney General does not assert harm to South Carolina's sovereign or proprietary interest.  The SCUTPA claims are stayed. JA 195, JA 212, JA 510.

At Google's urging, the antitrust court found that each state was not acting "in the capacity of a sovereign but as a private enforcer" when bringing its federal claims for injunctive relief. JA 503–505, JA 591–593. The Attorney General brought his SCUTPA claim in the public interest as *parens patriae. See infra* pp. 30–31. As Google recognized before the antitrust court, *parens patriae* is a quasi-sovereign— and not sovereign—role. JA 504. And it was undisputed below that the South Carolina Attorney General proceeding as *parens patriae* does not represent any South Carolina agency or department, such as SCPRT, and does not have possession, custody, or control over their records. *See* JA 94–95; *see also* JA 75, JA 77, JA 89 (Google relying, in opposition to SCPRT's motion to quash, on a letter from the state attorneys general taking this position); JA 164–165 (the district court relying on this 'letter in its order denying SCPRT's motion); H.B. 3866 § 1, 125th Gen. Assemb., Reg. Sess. (2023) (clarifying that the South Carolina Attorney General proceeding in the public interest does not represent individual agencies or have possession, custody, or control over their records).[2]

Because the Attorney General as *parens patriae* does not have possession, custody, or control over SCPRT's records, Google served an expansive third-party

---

[2] The history and text of this bill are reproduced in the addendum to this brief.

subpoena seeking SCPRT's online advertising file. JA 31–67. The subpoena has 118

defined terms and demands that SCPRT produce, under the threat of contempt, 27

categories of records which will fully expose SCPRT's proprietary digital

advertising campaign. JA 31–67. Nearly all records sought constitute trade secrets

which are exempt from production under the South Carolina Freedom of Information

Act. *See* S.C. Code Ann. § 30-4-40(1) (defining the trade secret exemption).

SCPRT moved to quash the subpoena on the ground that it violates SCPRT's

Eleventh Amendment sovereign immunity from suit in federal court.[3] JA 7–8.

Google did not dispute that SCPRT is entitled to Eleventh Amendment immunity.

JA 78. SCPRT argued that this immunity includes immunity from federal court

subpoenas pursuant to prevailing circuit court opinions. JA 19–23, JA 103–106.

SCPRT further argued that the Attorney General did not waive SCPRT's immunity

by bringing his claims against Google because: the Attorney General did not act in

a sovereign capacity; he has no executive control over SCPRT; he does not have

custody or control over SCPRT's records; and this case does not fit within the narrow

---

[3] States enjoy sovereign immunity from suit, which is at issue here, and sovereign immunity from liability in a suit, which is not at issue here. To avoid confusion, SCPRT uses the term Eleventh Amendment immunity as "convenient shorthand" for a state's broader immunity from suit in federal court. *See Alden v. Maine*, 527 U.S. 706, 713 (1999). This immunity from suit is not limited to the Eleventh Amendment's text, however. *See infra* pp. 8–10.

circumstances under which one agency can waive the immunity of another. JA 24–27, JA 109–112.

The district court denied SCPRT's immunity claim. The court assumed, without deciding, that states are immune from federal court subpoenas. JA 163. But it concluded that "such immunity would have been waived by South Carolina's voluntary involvement in the underlying action." JA 163. The court characterized SCPRT's immunity as "derivative in nature" and "only exist[ing] due to the immunity afforded to South Carolina and [SCPRT's] relationship to South Carolina as a state agency." JA 164. It determined that "it makes little sense[] to find a state's immunity can be imputed to its agencies but not its waiver of such immunity." JA 164. Relying on a letter from the state plaintiffs' outside counsel in the antitrust case suggesting that "Rule 45 subpoenas . . . are the proper channels" for Google to seek agency documents, the district court found "it would be fundamentally unfair to punish Google for simply following South Carolina's instruction to subpoena the requested documents because South Carolina allegedly lacks custody, control, and possession over documents within SCPRT." JA 164–165. But the district court did not analyze the nature of SCPRT's and the Attorney General's relationship, the nature of the Attorney General's role in the antitrust case, the cases restricting one state agency's ability to waive the immunity of another, or the context of the state plaintiffs' generic "instruction" to subpoena agency records.

SCPRT timely appealed. JA 166–176. The district court stayed its denial of SCPRT's Eleventh Amendment immunity pending this appeal. JA 168–172.

## SUMMARY OF ARGUMENT

The question presented relies upon two core principles of federalism. The first is the constitutional design that immunizes states from suit in federal court. The second is the admonition that federal courts respect states' choice of government organization. Properly applying these immutable rules compels reversal of the district court's denial of SCPRT's sovereign immunity.

Whether state agencies are immune from federal court subpoenas is a novel question in this circuit. However, binding precedent holding that state subpoenas to the federal government violate sovereign immunity, the broad historical definition of a "suit" as covering any exercise of coercive judicial process, and case law from other circuits each confirm that state immunity from suit includes subpoenas. But the district court erroneously overrode this immunity by disregarding the structure of South Carolina state government. The Attorney General is constitutionally separate from executive agencies like SCPRT. He does not represent them or have possession, custody, or control over their records in non-sovereign private enforcement and *parens patriae* actions like the one against Google. And the case he joined does not subject the entirety of state government to federal court process. He consequently could not and did not waive SCPRT's subpoena immunity.

6

This Court should reverse the district court's denial of SCPRT's sovereign immunity.

## STANDARD OF REVIEW

This Court reviews the district court's denial of SCPRT's sovereign immunity de novo. *See Pense v. Md. Dep't of Pub. Safety & Corr. Servs.*, 926 F.3d 97, 100 (4th Cir. 2019) ("Our review of the Immunity Decision is de novo."); *Harter v. Vernon*, 101 F.3d 334, 336–37 (4th Cir. 1996) ("We review questions of the applicability of Eleventh Amendment immunity *de novo*."); *see also Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022) (reviewing de novo the denial of a motion to quash a subpoena under sovereign immunity); *Bonnett*, 741 F.3d at 1159 (same); *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1102 (10th Cir. 2012) (same).

## ARGUMENT

## I.    SCPRT's Eleventh Amendment Immunity from Suit in Federal Court Bars Google's Subpoena.

While the district court assumed without deciding that SCPRT is immune from federal court subpoenas, this threshold question is relevant to this Court's jurisdiction and to properly frame the immunity waiver analysis. As explained below, SCPRT's Eleventh Amendment immunity extends to federal court subpoenas.

**A.** **State immunity from suit in federal court is a structural feature of the U.S. Constitution.**

The individual states in this country "retain 'a residuary and inviolable sovereignty'" and "are not relegated to the role of mere provinces or political corporations[.]" *Alden v. Maine*, 527 U.S. 706, 715 (1999) (quoting The Federalist No. 39, at 245). This sovereignty began with the Declaration of Independence, in which the states declared themselves to be "Free and Independent States" which were entitled to "all the rights and powers of sovereign states." *Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493 (2019) (citations and quotations omitted). Given their sovereign status, "[t]he Founders believed that both 'common law sovereign immunity' and 'law-of-nations sovereign immunity' prevented States from being amenable to process in any court without their consent." *Id.* Indeed, the states' immunity from private suit is an "integral component" of their sovereignty. *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 751–52 (2002). While states gave up some immunity by joining the union, the Constitution "did not disturb States' immunity from private suits" and in fact "enshrin[ed] this principle in our constitutional framework." *Id.* at 752. State sovereign immunity from private suit thus is a "historically rooted principle embedded in the text and structure of the Constitution." *Franchise Tax Bd. of Cal.*, 139 S. Ct. at 1499.

The sovereign immunity enjoyed by the states prohibits federal courts from hearing suits brought against non-consenting states. *Tenn. Student Assistance Corp.*

*v. Hood*, 541 U.S. 440, 446 (2004). Though it often is called "Eleventh Amendment" immunity,[4] a state's sovereign immunity "derives not from the Eleventh Amendment but from the structure of the original Constitution itself." *Alden*, 527 U.S. at 728. "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle[.]" *Id.* at 728–29; *see also Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms . . . .").

This immunity largely is a matter of federalism. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It preserves the respect owed to states as joint sovereigns with the federal government. *Fed. Mar. Comm'n*, 535 U.S. at 765; *Alden*, 527 U.S. at 714; *see also Pennhurst*, 465 U.S. at 99–100 ("[B]ecause of the problems of federalism inherent in making one sovereign appear against its will in the courts of the other, a restriction upon the exercise of the federal judicial power has long been considered to be appropriate in a case such as this.") (quotation omitted). This dual sovereignty was a "great innovation" of the founders: "our citizens would have two political capacities, one state and one federal, each protected

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI.

from incursion by the other—a legal system unprecedented in form and design."

*Printz v. United States*, 521 U.S. 898, 920 (1997) (quotation omitted).

**B.    Eleventh Amendment immunity shields states from federal court subpoenas.**

Whether Eleventh Amendment immunity protects states from federal court subpoenas is a novel question in this circuit. *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019) ("[T]his Circuit has not addressed whether a subpoena issued against a nonparty state agency—not merely a state official—runs afoul of that state's sovereign immunity . . . ."). But that question is readily answered "yes." Immunizing states from federal court subpoenas is the only conclusion supported by binding precedent, persuasive precedent, and the Constitution.

1.    <u>Binding precedent compels the conclusion that states are immune from federal court subpoenas.</u>

Eleventh Amendment immunity is a complete immunity from suit, not merely a defense to liability. *Fed. Mar. Comm'n*, 535 U.S. at 766. It "avoid[s] the indignity of subjecting a State to the coercive process of judicial tribunals at the insistence of private parties." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 58 (1996) (quotation omitted). The type of relief sought is "irrelevant to the question [of] whether the suit is barred by the Eleventh Amendment." *Id*

The Supreme Court defines a "suit" for state Eleventh Amendment immunity the same way as it does federal sovereign immunity from suit in state court. A suit

includes all instances where a judgment would be paid by public funds, would "interfere with the public administration," or would "restrain the Government from acting, or to compel it to act." *Pennhurst*, 465 U.S. at 101 n.11 (cleaned up) (applying this definition to Eleventh Amendment immunity); *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (referring to federal sovereign immunity).

This Court has held that state court subpoenas to the federal government are suits under this definition:

> The nature of the subpoena proceeding against a federal employee to compel him to testify about information obtained in his official capacity is inherently that of an action against the United States because such a proceeding interferes with the public administration and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function.

*Boron Oil Co. v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989) (cleaned up). Because states are immune from the same suits as the federal government, *Boron Oil* bars federal court subpoenas to states.

2. <u>Two hundred years of precedent otherwise confirms that states are immune from federal court subpoenas.</u>

Even without the benefit of *Boron Oil*, decisions from the Supreme Court and the other circuit courts compel the same conclusion: states are immune from federal court subpoenas.

a. *Subpoenas fall under the Supreme Court's long-standing definition of "suit" for Eleventh Amendment immunity.*

For nearly 200 years, the Supreme Court has held that a "suit" extends well beyond the initiation of a formal lawsuit through the filing of a complaint and includes any exercise of coercive federal judicial process.

For example, in *Cohens v. Virginia,* 19 U.S. 264 (1821), the Court answered "[w]hat is a suit" by saying it is "the prosecution, or pursuit, of some claim, demand, or request," and the instruments by which one makes "the lawful demand of one's right" are a "diversity of suits and actions." *Id.* at 407–08. Just eight years later, the Court reiterated that the historical meaning of the term "suit" is

> a very comprehensive one, and is understood to apply to *any proceeding* in a court of justice, by which an individual pursues that remedy in a court of justice, which the law affords him. *The modes of proceeding may be various*, but if a right is litigated between parties in a court of justice, the proceeding by which the decision of the court is sought, is a suit.

*Weston v. City Council of Charleston*, 27 U.S. 449, 464 (1829) (emphasis added).

The Supreme Court has repeatedly reinforced this early broad view of suits barred by the shield of Eleventh Amendment immunity. For example, almost sixty years after *Weston*, the Court explained:

> The very object and purpose of the eleventh amendment were to *prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties*. It was thought to be neither becoming nor convenient that the several states of the Union, invested with that large residuum of sovereignty which had not been delegated

12

> to the United States, should be summoned as defendants to answer to complaints of private persons, whether citizens of other states or aliens, *or that the course of their public policy and the administration of their public affairs should be subject to and controlled by the mandates of judicial tribunals, without their consent, and in favor of individual interests*.

*Ex parte Ayers*, 123 U.S. 443, 505 (1887) (emphasis added). And just four years ago, the Court reemphasized the Eleventh Amendment's sweeping protection against any federal judicial process. *Franchise Tax Bd. of Cal.*, 139 S. Ct. at 1493 ("The Founders believed that both 'common law sovereign immunity' and 'law-of-nations sovereign immunity' prevented States from being amenable *to process* in any court without their consent.") (emphasis added); *see also Pennhurst*, 465 U.S. at 101 n.11 (holding suits against the state include those where the judgment sought would "interfere with the public administration" or "restrain the Government in acting, or to compel it to act") (quoting *Dugan*, 372 U.S. at 620).

A subpoena *duces tecum* is a demand pursued in court for records within a non-party's possession which a party asserts a legal right to obtain. It subjects a state to the coercive process of judicial tribunals at the instance of a private party. It interferes with a state's public administration and seeks to compel it to act. A subpoena thus is a suit under the broad definition of that term for purposes of Eleventh Amendment immunity.

b. *State, federal, and tribal sovereign immunity cases from other circuits establish that subpoenas to states are suits.*

The Fifth Circuit recently confirmed that Eleventh Amendment immunity shields states from federal court subpoenas. "[T]he indignity that sovereign immunity was designed to prevent may arise *either* when the state is a defendant *or* when its sovereign prerogatives are subjected to individuals through coercive judicial process." *Russell*, 49 F.4th at 514 (emphasis in original). Because sovereign immunity prefers substance over form, it applies to states as third parties to litigation and not just as defendants. *Id.* The interests sovereign immunity protects—the state's dignity and authority over its prerogatives—"are no less interesting when a sovereign is served with a *subpoena duces tecum* instead of a complaint." *Id.* at 515; *see also id.* at 515–16 ("When haled into court on pain of contempt and forced to produce its papers (and litigate about whether it has to), it is no succor to the sovereign that it is not named in the complaint."). Forced compliance with a subpoena therefore "violates the inviolable sovereignty retained by the states." *Id.* at 515 (quotations omitted). As a result, states are immune from subpoenas issued by private parties in federal court. *Id.*; *see also Bonnett*, 741 F.3d at 1161 (stating in dicta that Tenth Circuit precedent "may well shield a state agency from discovery in federal court").

This result is compelled by established law recognizing that federal and tribal sovereign immunity prohibit subpoenas. As noted above, the federal government is

14

immune from subpoenas in state court proceedings. *E.g.*, *Puerto Rico v. United States*, 490 F.3d 50, 61 n.6 (1st Cir. 2007); *Boron Oil*, 873 F.2d at 70–71; *Russell*, 49 F.4th at 515; *In re Elko Cnty. Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Houston Bus. J., Inc. v. Off. of Comptroller of Currency*, 86 F.3d 1208, 1211 (D.C. Cir. 1996). Indian tribes similarly are immune from subpoenas. *E.g.*, *Alltel Commc'ns*, 675 F.3d at 1105–06; *Bonnett*, 741 F.3d at 1160; *see also Miccosukee Tribe of Indians of Fla. v. Bermudez*, 92 So. 3d 232, 234 (Fla. Ct. App. 2012) ("[T]he Tribe has sovereign immunity from suit, and this extends to protect the Tribe from complying with subpoenas."). In both instances, a subpoena's coercive effect renders it a suit for purposes of sovereign immunity. *See Boron Oil*, 873 F.2d at 70–71 (holding a subpoena to the federal government "is inherently that of an action against the United States because such a proceeding interferes with the public administration and compels the federal agency to act in a manner different from that in which the agency would ordinarily choose to exercise its public function") (cleaned up); *Alltel Commc'ns*, 675 F.3d at 1103 (holding subpoenas "command a government unit to appear in federal court and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with government functions is apparent.").

These federal and tribal subpoena immunity cases apply with equal force to SCPRT's Eleventh Amendment immunity. *Russell*, 49 F.3d at 518–19; *see also*

*Lewis v. Clarke*, 581 U.S. 155, 164 (2017) ("The protection offered by tribal sovereign immunity here is no broader than the protection afforded by state or federal sovereign immunity."); *Belknap v. Schild*, 161 U.S. 10, 18 (1896) (holding states are "as exempt as the United States are from private suit"); *Bonnett*, 741 F.3d at 1160 ("But in order to hold the Tribe is not immune in this case, we would have to define the same term, 'suit,' to mean two different things, depending on whether judicial process is being exercised against the United States or an Indian tribe. This we are not inclined to do."); *cf. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (seeing "no reason why the rule [on waivers] should be different with respect to state sovereign immunity" when it is well established that waivers are not implied in the context of federal sovereign immunity). If a subpoena is a suit for purposes of federal or tribal sovereign immunity, then it is a suit for state sovereign immunity as well. *See Bonnett*, 741 F.3d at 1160. A subpoena does not become something less invasive simply because it is served on a state, which under the Constitution is a joint sovereign with the federal government. *See Alden*, 527 U.S. at 714.

> c.    *The prevailing trend recognizes that states are immune from federal court subpoenas.*

The Eighth Circuit was the first circuit court to address this question. It originally held, in a cursory opinion, that states are not immune from federal court subpoenas. *In re Mo. Dep't of Nat. Res.*, 105 F.3d 434, 436 (8th Cir. 1997). The

Seventh Circuit was next, briefly weighing in twice in dicta in inapposite contexts. *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012) (suggesting without analysis and after concluding the appeal should be dismissed that the subpoenas did not violate state sovereign immunity because no ultimate relief was sought from the agencies); *Barnes v. Black*, 544 F.3d 807, 812 (7th Cir. 2008) (summarily suggesting in response to an amicus brief regarding a writ for a prison warden to transport a prisoner to court for his personal injury suit that a document subpoena to a non-party state official does not "compromise state sovereignty to a significant degree" to violate the Eleventh Amendment).

But the tide has turned in the circuit courts. The Eighth Circuit called its initial holding into question when it recognized tribal sovereign immunity from subpoenas:

> [W]e are unwilling to predict how the Supreme Court would decide a case in which disruptive third-party subpoenas that would clearly be barred in a State's own courts are served on a state agency in private federal court civil litigation. Based upon the reasoning in cases such as *Boron Oil*, the Court might well conclude that the Eleventh Amendment applies, or it might apply a broader form of state sovereign immunity as a matter of comity, which would likewise apply to claims of tribal immunity.[5]

*Alltel Commc'ns*, 675 F.3d at 1104–05; *see also McGehee v. Neb. Dep't of Corr. Servs.*, 968 F.3d 899, 901 (8th Cir. 2020) (Stras, J. concurring), *vacated as moot*,

---

[5] *Missouri Department of Natural Resources* nevertheless remains binding in the Eighth Circuit until the court reconsiders it en banc. *See United States v. Cole*, 537 F.3d 923, 928 (8th Cir. 2008) (holding one panel cannot overrule another).

987 F.3d 785 (8th Cir. 2021) ("I have doubts whether, under basic sovereign-immunity principles, a state may be haled into federal court solely for the purpose of answering a third-party subpoena. . . . But because we approved of this practice in a nearly identical case, I reluctantly join the court's opinion.") (internal citations omitted). The Tenth Circuit, also finding that tribes are immune from subpoenas, similarly believed that "the Eleventh Amendment may well shield a state agency from discovery in federal court." *Bonnett*, 741 F.3d at 1161. And building on this momentum, the Fifth Circuit unequivocally held that Eleventh Amendment immunity bars federal court subpoenas to states. *Russell*, 49 F.4th at 512–19.

The most recent district court case SCPRT is aware of agreed that states are immune from federal court subpoenas. *Felix v. Cnty. of Nassau*, No. 21-CV-676 (JAM)(SIL), 2023 WL 5978189, at *3–5 (E.D.N.Y. Sept. 12, 2023); *see also Est. of Gonzalez v. Hickman*, 466 F. Supp. 2d 1226, 1229 (E.D. Cal. 2006) (same). Another case noted "there is authority supporting" the contention that states are immune from federal court subpoenas, but it ultimately concluded otherwise. *Ali v. Carnegie Inst. of Wash.*, 306 F.R.D. 20, 30 n.8 (D.D.C. 2014). The remaining district court decisions largely pre-date the recent circuit court opinions. And they allow subpoenas to the state mainly by citing one another with varying degrees of substantive analysis and consideration of the arguments presented here. *E.g., Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 248–51

(D.S.C. 2020)[6]; *United States v. Univ. of Mass., Worcester*, 167 F. Supp. 3d 221, 223–25 (D. Mass. 2016); *Wilson v. Venture Fin. Grp., Inc.*, No. C09-5768BHS, 2010 WL 4512803, at *1–2 (W.D. Wash. Nov. 2, 2010); *Arista Records, LLC v. Does 1-14*, No. 7:08cv00205, 2008 WL 5350246, at *3–5 (W.D. Va. Dec. 22, 2008); *Jackson v. AFSCME Loc. 196*, No, 3:07CV0471 (JCH), 2008 WL 1848900, at *2–3 (D. Conn. April 25, 2008); *Allen v. Woodford*, 544 F. Supp. 2d 1074, 1078–79 (E.D. Cal. 2008); *Laxalt v. McClatchy*, 109 F.R.D. 632, 634–35 (D. Nev. 1986).

None of the decisions overruling an immunity claim had the benefit of *Russell*, and most do not discuss the analogous federal and tribal immunity cases, the proper definition of a suit, or the other arguments SCPRT raises. They consequently are of limited utility. And many of these decisions are based on the incorrect premise that a subpoena is a mere "discovery" request. *See, e.g., Mo. Dep't of Nat. Res.*, 105 F.3d at 436; *Univ. of Mass.*, 167 F. Supp. 3d at 224; *Ali*, 306 F.R.D. at 30 n.8; *Arista Records*, 2008 WL 5350246, at *4; *Allen*, 544 F. Supp. 2d at 1079. Discovery is limited to parties to an action who are already lawfully before the Court. Fed. R. Civ. P. 26(b)(1). A subpoena, on the other hand, subjects a *non*-party to a court's jurisdiction under the threat of contempt. *See generally* Fed. R. Civ. P. 45; *see also* 9A Wright & Miller, *Federal Practice & Procedure* § 2451 (2d ed. 1995) ("A

---

[6] The South Carolina State Ports Authority appealed the denial of its motion to quash in *Charleston Waterkeeper* to this Court. However, the appeal was *dismissed as moot after the parties to the underlying case settled.*

'subpoena' is a mandate lawfully issued in the name of the court . . . ."). Subpoenas therefore require an "an even more demanding and sensitive inquiry than the one governing discovery generally." *Va. Dep't of Corrs.*, 921 F.3d at 189 (citation and quotation omitted).

This Court should follow *Russell* and hold that states are immune from subpoenas in federal court, and reject any holdings reached without the benefit of the Fifth Circuit's reasoned analysis and without full consideration of the arguments raised here.

## II.     The South Carolina Attorney General Did Not Waive SCPRT's Immunity from Federal Court Subpoenas by Joining the Antitrust Case Against Google.

The district court made three independent errors in finding that the South Carolina Attorney General waived SCPRT's subpoena immunity: (1) the Attorney General does not represent SCPRT or have custody, possession, or control over its records; (2) the Attorney General did not bring his claims against Google in a sovereign capacity; and (3) Google's subpoena falls outside the limited immunity waiver a state agency makes by suing in federal court. The district court's finding that the Attorney General's participation in the antitrust case constituted a waiver on behalf of SCPRT disregards the structure of South Carolina's government and extends the scope of waiver by voluntary litigation beyond constitutionally permissible limits.

20

### A.     Waiver of immunity by voluntarily appearing in federal court is narrowly tailored.

A state's Eleventh Amendment immunity may be waived in three ways:

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority . . . . Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law . . . . Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court.

*Lee-Thomas v. Prince George's Cnty. Pub. Sch*., 666 F.3d 244, 249 (4th Cir. 2012)

(cleaned up). There is no dispute that the first two exceptions do not apply. Congress

did not abrogate Eleventh Amendment immunity from subpoenas. *See Fin.*

*Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*,

598 U.S. 339, 346 (2023) ("The standard for finding a congressional abrogation is

stringent. Congress, this Court has often held, must make its intent to abrogate

sovereign immunity unmistakably clear in the language of the statute.") (quotation

omitted)*.* And this action does not invoke the *Ex parte Young* fiction expressed in

the second exception. *See Lee-Thomas*, 666 F.3d at 249.

As to the third path, a state may waive its immunity in two ways. A state may

"directly and affirmatively waive its Eleventh Amendment immunity in a state

statute or constitutional provision" by explicitly specifying the state's intention to

subject itself to suit in federal court. *Litman v. George Mason Univ*., 186 F.3d 544,

550 (4th Cir. 1999) (quotation omitted). Or a state may waive its immunity by

voluntarily invoking federal jurisdiction. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002). South Carolina has not consented to federal subpoenas by statute or in its constitution. Thus, the question is whether the South Carolina Attorney General's participation in the Google antitrust case as a private enforcer and *parens patriae* constitutes a voluntary invocation of federal jurisdiction on behalf of SCPRT such that SCPRT is subject to coercive federal process.

As "a constitutionally protected privilege," whether a state waived its Eleventh Amendment immunity must be narrowly construed, *Coll. Sav. Bank*, 527 U.S. at 682, and courts in the Fourth Circuit must "strictly construe[] the scope of a sovereign immunity waiver in favor of the sovereign," *Kadel v. N.C. State Health Plan for Tchrs. & State Emps.*, 12 F.4th 422, 429 (4th Cir. 2021), *as amended* (Dec. 2, 2021). States are afforded every reasonable presumption against waiver of Eleventh Amendment immunity. *Coll. Sav. Bank*, 527 U.S. at 682. Moreover, sovereign immunity "is a flexible defense with multiple aspects that states can independently relinquish without affecting others." *Stroud v. McIntosh*, 722 F.3d 1294, 1301 (11th Cir. 2013).

The test for whether a state has waived sovereign immunity is therefore stringent. *Sossamon v. Texas*, 563 U.S. 277, 284 (2011); *see also Litman*, 186 F.3d at 550 ("But because of the Eleventh Amendment's vital role in preserving the federal balance, determinations of whether a State has waived its immunity are

subjected to 'stringent,' exacting standards.") (quoting *Coll. Savings Bank*, 527 U.S. at 682). The state's litigation conduct constituting waiver must be "unambiguous" and "evince a clear choice to submit its rights for adjudication by the federal courts." *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 52 (1st Cir. 2003); *see also In re Flonase Antitrust Litig.*, 879 F.3d 61, 69–70 (3d Cir. 2017) (holding waiver by voluntary litigation act requires a "clear indication of the State's intent to waive its immunity") (citations and quotations omitted); *A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 239 (3d Cir. 2003) (holding waiver must constitute an intentional relinquishment of a known right and courts will indulge every presumption against waiver); *Tegic Commc'ns Corp. v. Bd. of Regents of Univ. of Tex. Sys.*, 458 F.3d 1335, 1342 (Fed. Cir. 2006) ("While waiver in the litigation context focuses on the litigation act, the waiver must nonetheless be 'clear.'"); *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 144 (D.D.C. 2002) ("Waiver is defined as the "*voluntary* relinquishment or abandonment—express or implied—of a legal right or advantage.") (quotation omitted).

State law determines whether the person suing in federal court has authority to waive sovereign immunity, while the scope of the waiver once effected is a question of federal law. *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington*, *D.C., Inc.)*, 119 F.3d 1140, 1148 (4th Cir. 1997); *see also Arecibo Cmty. Health Care, Inc*. *v. Puerto Rico*, 270 F.3d 17, 25 n.10 (1st Cir. 2001) ("A

state official may only waive the state's sovereign immunity during the course of litigation where specifically authorized to do so by that state's constitution, statutes, or decisions."); *cf. Lapides*, 535 U.S. at 621–23 (holding the authorization to remove a case to federal court is enough to waive sovereign immunity when exercised).

### B. The Attorney General's antitrust and SCUTPA claims did not waive SCPRT's immunity from federal court subpoenas.

#### 1. The Attorney General does not represent SCPRT or have custody or control over SCPRT's records.

It is undisputed that SCPRT's records are "not within the possession, custody or control" of the Attorney General. JA 94. Similarly, the South Carolina General Assembly is clarifying that the Attorney General does not represent South Carolina agencies when he brings a lawsuit in the public's interest. *See* H.B. 3866 § 1, 125th Gen. Assemb., Reg. Sess. (2023). Considering the narrow lens through which courts must view waiver of a constitutionally protected privilege, it necessarily follows that the Attorney General cannot waive a state agency's sovereign immunity from being compelled to produce records in federal court when the Attorney General does not represent the agency and cannot produce such records independently. *See*, *e.g.*, *Coll. Sav. Bank*, 527 U.S. at 682; *Kadel*, 12 F.4th at 429.

Federal courts must defer to a state's determination of its own government structure and delineation of the powers of those who exercise governmental authority. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). SCPRT is an executive

agency under the Governor of South Carolina. *See, e.g.,* S.C. Code Ann. § 1-30-10(A)(16) (establishing SCPRT as part of the executive branch); S.C. Code Ann. § 1-30-10(D) (allowing the governor to require the creation of ad hoc committees within SCPRT); S.C. Code Ann. § 51-1-10(a) (giving the governor the power to appoint and remove SCPRT's director). As explained below, the Attorney General operates independently of the Governor. The district court's finding that the Attorney General can unilaterally waive SCPRT's Eleventh Amendment immunity improperly disregards this structure of South Carolina's government.

The Attorney General and the Governor are separate popularly elected constitutional officers. *See* S.C. Const. art. IV, §§ 1, 3 (vesting the Governor with "[t]he supreme executive authority of this State" and establishing that the Governor be popularly elected); S.C. Const. art. VI, § 7 ("There shall be elected by the qualified voters of the State . . . an Attorney General" whose duties "shall be prescribed by law . . . ."). The Attorney General does not answer to the Governor and may be removed only at the ballot box or by impeachment. S.C. Const. art. XV.

While the Attorney General "has the dual role of serving the sovereign of the State and the general public," he performs these two functions individually. *State ex rel. Condon v. Hodges*, 562 S.E.2d 623, 629 (S.C. 2002); *see also Condon v. State*, 583 S.E.2d 430, 434 (S.C. 2003) (holding the Attorney General's broad power to bring actions on behalf of the state is not "unlimited"). The Attorney General

provides advice to the Governor and agency heads upon request, and he can represent executive agencies in court as necessary. *E.g.*, S.C. Code Ann. § 1-7-40; *id*. § 1-7-90; *id*. § 1-7-110. But the Attorney General cannot automatically appear in a case on behalf of the state and its agencies. *See Condon*, 583 S.E.2d at 433–34. Like any other person, he must move to intervene under Rule 24, SCRCP, if the state and its agencies are otherwise represented. *Id*. at 434. And—underscoring the constitutional separation between the Governor and the Attorney General—the Attorney General can sue the Governor in the public's interest without violating any constitutional, statutory, or attorney conflict rules. *E.g., Hodges*, 562 S.E.2d at 627–29. More broadly, the Attorney General does not represent any subset of South Carolina's government when he brings any lawsuit in the public interest. H.B. 3866 § 1, 125th Gen. Assemb., Reg. Sess. (2023).

As the master of its own government structure, South Carolina's lack of authority cloaking the Attorney General with possession, custody, or control over another state agency's records must be afforded utmost respect under principles of federalism. *See*, *e.g*., *Coll. Sav. Bank*, 527 U.S. at 682 (1999) ("Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights.") (quotation omitted); *Arecibo Cmty.,* 270 F.3d at 25 n.10 ("A state official may only waive the state's sovereign immunity during the course of litigation where specifically authorized to do so by that state's constitution, statutes, or decisions.").

This is particularly true here, where state law already provides a way for non-parties to obtain public records. S.C. Code Ann. §§ 30-4-10 to -165 (South Carolina's Freedom of Information Act). It is not a federal court's position to restructure or rewrite the authority granted to South Carolina agencies under state law.

The district court's finding that "it would be fundamentally unfair to punish Google for simply following South Carolina's instruction to subpoena the requested because South Carolina allegedly lacks custody, control, and possession over documents within SCPRT" therefore misses the mark. JA 164–165. The state plaintiffs' generic suggestion that subpoenas are the "proper channel" for Google to obtain individual agency records, JA 94–95, does little more than state the general proposition that records not within a party's possession, custody, or control are obtained by subpoena. Without representing the agencies and without possession, custody, or control of agency records, the Attorney General cannot waive agency Eleventh Immunity regarding those records. Federal courts cannot reorder state government simply because doing so seems "fair" to a private litigant. *See Alltel Commc'ns*, 675 F.3d at 1106 (refusing to challenge the "well-established" doctrine of sovereign immunity "even if denying [a party] the discovery it seeks in this case works some inconvenience, or even injustice").

This Court should therefore adhere to the faithful application of constitutional law and confirm that an attorney who does not represent SCPRT or control its records cannot waive SCPRT's immunity from a subpoena.

### 2. The Attorney General did not sue Google in a sovereign capacity.

"Not all that a State does . . . is based on its sovereign character." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982). While the state antitrust plaintiffs generically allege that they "bring this action in their respective sovereign capacities and as *parens patriae*," *e.g.*, JA 232, the capacity in which the South Carolina Attorney General proceeds is determined by the claims *he* asserts. *See Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668, 675 (D.C. Cir. 1976) ("Any answer to the question whether a state may sue on behalf of its citizens must be qualified by statement of the type and extent of the interests to be represented, and of the defendants against whom the action is brought."). For when the Attorney General does not proceed on behalf of the state's interest, his actions do not extend to the state as a whole. *Cf. Hodges*, 562 S.E.2d at 629 (noting the Attorney General can separately perform his "dual role of serving the sovereign of the State and the general public"). The capacity in which the Attorney General brought his claims against Google therefore is independently dispositive of the waiver question—if the Attorney General does not act as a sovereign, he cannot waive SCPRT's Eleventh Amendment sovereign immunity.

A state proceeding as *parens patriae* pursues quasi-sovereign interests which "stand apart" from sovereign ones. *Snapp*, 458 U.S. at 602. "A state has a quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general." *Id.* at 607; *see also Kleppe*, 533 F.2d at 673 (suggesting that a state may not possess *parens patriae* standing if the complained-of injury is solely to the state); *Microsoft Corp.*, 209 F. Supp. 2d at 150 ("Injury in a suit brought by a state in its *parens patriae* capacity rests upon 'sufficiently severe and generalized' harm to the welfare of that state's citizens, rather than harm to the proprietary interest of the state."). But "[t]he vagueness of this concept can only be filled in by turning to individual cases." *Snapp*, 458 U.S. at 602.

It is undisputed that the state plaintiffs brought the federal antitrust claims only as private enforcers not as sovereigns. JA 591–593; *see also* JA 503–505. The MDL court's finding to this effect, which was made at Google's insistence, is the law of the case. *See Christianson v. Colt Inds. Op. Corp*, 486 U.S. 800, 816 (1988) ("[T]he doctrine applies as much to the decisions of a coordinate court in the same case as to a court's own decisions."); *Microsoft Corp.*, 209 F. Supp. 2d at 150 ("It scarcely bears repeating that, in order to find and affirm liability, the District Court and the Court of Appeals necessarily concluded that Plaintiffs' capacity to bring suit as *parens patriae* was satisfied on all fronts.").

The Attorney General similarly brought his SCUTPA claims in his non-sovereign *parens patriae* role. His state law claims do not "detract from the presence of the federal claims and the relief afforded thereunder." *Microsoft Corp*., 209 F. Supp. 2d at 153; *see also id.* at 154–55 (holding it is a "well-established right of the states to supplement federal antitrust regulation with state antitrust laws"). These claims therefore do not change the existing non-sovereign status of this case.

Moreover, the SCUTPA claim standing alone is non-sovereign. The Attorney General may bring an enforcement action under SCUTPA in the state's name to benefit its citizens. *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms., Inc*., 777 S.E.2d 176, 189 (S.C. 2015). Unlike civil actions brought by private citizens under SCUTPA, "there is no actual impact requirement" for an enforcement action brought by the Attorney General, *id.*, because "a SCUTPA action brought by the State is to *protect the citizens of South Carolina* from unfair or deceptive acts in the conduct of any trade or commerce," *id.* at 192 (emphasis added). *See also Plowman v. Bagnal*, 450 S.E.2d 36, 38 (S.C. 1994) (differentiating between governmental action under the SCUTPA and private action). South Carolina courts have consistently held that the Attorney General proceeds on behalf of the health and well-being of South Carolina citizens—and not the state's sovereign interests—when pursuing enforcement actions under the SCUTPA. *Wilson*, 777 S.E.2d at 192; *Plowman*, 450 S.E.2d at 38; *cf. Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th

30

Cir. 2005) (holding arms of the state are not citizens of a state for purposes of diversity jurisdiction). The Attorney General's SCUTPA claims are non-sovereign *parens patriae* claims. *Snapp*, 458 U.S. at 602 (holding that quasi-sovereign interests are not sovereign interests); *AU Optronics Corp. v. South Carolina*, 699 F.3d 385, 394 (4th Cir. 2012) (holding that a SCUTPA claim by the Attorney General asserts a quasi-sovereign *parents patriae* interest).

Thus, the Attorney General is not proceeding as a sovereign in connection with either his federal law or SCUTPA claims. By not enforcing a sovereign interest, the Attorney General did not waive SCPRT's Eleventh Amendment immunity merely by bringing his antitrust claims against Google.

3.     Google's subpoena falls outside the limited scope of one agency's waiver of another's immunity.

The district court—without citing authority—denied SCPRT's immunity claim because SCPRT's immunity is derivative of the State and "it makes little sense[] to find a state's immunity can be imputed to its agencies but not its waiver of such immunity." JA 164. This was error.

No court has adopted the broad proposition that a waiver by one arm of the state necessarily is a waiver by all. "Each state agency . . . may choose whether to remove the cloak of Eleventh Amendment immunity." *Nat'l R.R. Passenger Corp. v. Roundtree Transp. & Rigging, Inc.*, 896 F. Supp. 1204, 1207 (M.D. Fla. 1995); *see also Oracle Am., Inc. v. Or. Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1026

31

(D. Or. 2015) (finding that one state agency had waived its Eleventh Amendment immunity to suit but that the other defendant agency did not). Courts thus strictly circumscribe the ability of one state agency to waive the Eleventh Amendment immunity of another.

One agency's suit will only allow third-party complaints against another agency which arise from the same event and are "asserted defensively, by way of recoupment, for the purpose of defeating or diminishing the State's recovery, but not for the purpose of obtaining an affirmative judgment against the State," including injunctive relief. *N.J. Dep't of Envtl. Protection v. Gloucester Envtl. Mgmt. Servs., Inc.*, 923 F. Supp. 651, 663–64 (D.N.J. 1995). Similarly, one state agency filing a bankruptcy proof of claim subjects other agencies to counterclaims by the bankruptcy trustee to offset the original claim "where the two agencies in question act as unitary creditor." *Ossen v. Dep't of Soc. Servs. (In re Charter Oak Assocs.)*, 361 F.3d 760, 772 (2d Cir. 2004). Waiver of another agency's immunity might not occur if that state's government operates differently. *Id.*

Google's subpoena does not fit within the narrow class of suits allowed against other state agencies. The subpoena is not a claim for recoupment or setoff, and the Attorney General and SCPRT did not act unitarily in connection with the Attorney General's antitrust case. The Attorney General's suit therefore could not have waived SCPRT's Eleventh Amendment immunity.

32

The district court's expansive finding disregards the structure of South Carolina's government. As discussed above, *supra.* Pp. 24–27, SCPRT is statutorily and constitutionally separate from the Attorney General. The filing of a lawsuit in the public's interest by a constitutional officer who does not oversee executive agencies does not open the non-public records of every state agency, department, or institution to inspection. Expanding the scope of waiver from one agency's voluntary litigation act to another agency brought involuntarily into federal court because of that act, without more, exceeds the bounds of federalism to invade a state's constitutionally protected privilege. *See, e.g., Lapides*, 535 U.S. at 624; *Oracle Am.*, 145 F. Supp. 3d at 1026.

## CONCLUSION

The district court was correct to assume that SCPRT is immune from federal court subpoenas. Hundreds of years of Supreme Court precedent, binding circuit precedent, and the modern trend from other circuits compels that conclusion. But the district court erred in finding that the Attorney General waived that immunity for an unrelated state agency. The court failed to properly respect the order of South Carolina's state government by allowing the Attorney General's non-sovereign private enforcement and *parens patriae* suit against Google to waive SCPRT's constitutional rights. SCPRT therefore requests that this Court reverse the district court's denial of its motion to quash Google's subpoena.

## STATEMENT ON ORAL ARGUMENT

Under Local Rule 34(a), SCPRT respectfully requests that this appeal be scheduled for oral argument. This appeal presents novel questions of law raising district federalism concerns which will have a wide impact throughout this circuit, and one of which has divided the circuits. Oral argument therefore will substantially aid the decisional process.

Respectfully submitted,

**WILLOUGHBY HUMPHREY & D'ANTONI, P.A.**

*s/R. Walker Humphrey, II*
R. Walker Humphrey, II
133 River Landing Drive, Suite 200
Charleston, SC 29492
(843) 619-4426
whumphrey@whdlawyers.com

Mitchell Willoughby
Margaret O'Shields
Hunter R. Pope
930 Richland Street
Columbia, SC 29201
(803) 252-3300
mwilloughby@whdlawyers.com
moshields@whdlawyers.com
hpope@whdlawyers.com

October 25, 2023
Charleston, South Carolina

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   this document contains 8,270 words.

2. This brief complies with the typeface and type style requirements because:

   this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Times New Roman.

   *s/R. Walker Humphrey, II*
   R. Walker Humphrey, II

October 25, 2023

## ADDENDUM

## South Carolina General Assembly
125th Session, 2023-2024

**H. 3866**

**STATUS INFORMATION**

General Bill
Sponsors: Rep. Rutherford
Companion/Similar bill(s): 486

Introduced in the House on February 2, 2023
Introduced in the Senate on March 8, 2023
Last Amended on March 7, 2023
Currently residing in the House

Summary: Attorney General

**HISTORY OF LEGISLATIVE ACTIONS**

| Date | Body | Action Description with journal page number |
|------|------|---------------------------------------------|
| 2/2/2023 | House | Introduced and read first time (House Journal-page 6) |
| 2/2/2023 | House | Referred to Committee on **Judiciary** (House Journal-page 6) |
| 3/1/2023 | House | Committee report: Favorable with amendment **Judiciary** (House Journal-page 38) |
| 3/7/2023 | House | Amended (House Journal-page 36) |
| 3/7/2023 | House | Read second time (House Journal-page 36) |
| 3/7/2023 | House | Roll call Yeas-114  Nays-0 (House Journal-page 37) |
| 3/8/2023 | House | Read third time and sent to Senate (House Journal-page 18) |
| 3/8/2023 | Senate | Introduced and read first time (Senate Journal-page 12) |
| 3/8/2023 | Senate | Referred to Committee on **Judiciary** (Senate Journal-page 12) |
| 3/8/2023 | | Scrivener's error corrected |
| 3/17/2023 | Senate | Referred to Subcommittee: Senn (ch), McLeod,  Loftis, Adams, Stephens |

36

3/29/2023 Senate   Committee report: Favorable with amendment **Judiciary**
                   (Senate Journal-page 13)
3/30/2023          Scrivener's error corrected

~~Indicates Matter Stricken~~
Indicates New Matter

COMMITTEE REPORT
March 29, 2023

**H. 3866**

Introduced by Rep. Rutherford

S. Printed 03/29/23--S.                    [SEC 3/30/2023 11:19 AM]
Read the first time March 08, 2023

_____

### THE COMMITTEE ON SENATE JUDICIARY

To who was referred a Bill (H. 3866) to amend the South Carolina Code of Laws by adding Section 1-7-95 so as to clarify that, when the Attorney General proceeds in the public interest, the Attorney, etc., respectfully

### REPORT:

That they have duly and carefully considered the same, and recommend that the same do pass with amendment:

Amend the bill, as and if amended, by deleting SECTION 3.

Renumber sections to conform.

Amend title to conform.

LUKE RANKIN for Committee.

## STATEMENT OF ESTIMATED FISCAL IMPACT

**Explanation of Fiscal Impact**

**State Expenditure**

This bill establishes that when the Office of the Attorney General brings or defends an action in the name of the State of South Carolina, the Attorney General acts in the public interest of the State and not as the legal representative or attorney of any department or agency of state government. Therefore, the Attorney General cannot be considered to have possession, custody, or control over state agency documents or electronically stored information. This bill does list an exception for actions brought under Section 39-5-140 on behalf of a department or agency of state government. Further, this bill establishes that at the conclusion of the investigation or litigation, the Attorney General may return, destroy, or maintain information within applicable document retention policies.

This bill will have no fiscal impact on the Attorney General's Office, as any additional costs can be managed within existing appropriations.

This fiscal impact has been updated to reflect that the House of Representatives adopted the House Judiciary Committee amendment.

**State Expenditure**

This bill establishes that when the Office of the Attorney General brings or defends an action in the name of the State of South Carolina, the Attorney General acts in the public interest of the State and not as the legal representative or attorney of any department or agency of state government. Therefore, the Attorney General cannot be considered to have possession, custody, or control over state agency documents or electronically stored information. This bill does list an exception for actions

brought under Section 39-5-140 on behalf of a department or agency of state government. Further, this bill establishes that at the conclusion of the investigation or litigation, the Attorney General may return, destroy, or maintain information within applicable document retention policies.

This bill will have no fiscal impact on the Attorney General's Office, as any additional costs can be managed within existing appropriations.

Frank A. Rainwater, Executive Director
Revenue and Fiscal Affairs Office

_____

## A BILL

TO AMEND THE SOUTH CAROLINA CODE OF LAWS BY ADDING SECTION 1-7-95 SO AS TO CLARIFY THAT, WHEN THE ATTORNEY GENERAL PROCEEDS IN THE PUBLIC INTEREST, THE ATTORNEY GENERAL DOES NOT UNDERTAKE REPRESENTATION OF STATE AGENCIES AND CANNOT BE CONSIDERED TO HAVE POSSESSION, CUSTODY, OR CONTROL OVER STATE AGENCY DOCUMENTS OR ELECTRONICALLY STORED INFORMATION; AND BY ADDING SECTION 39-5-55 SO AS TO SPECIFY THAT THE ATTORNEY GENERAL IS ACTING IN THE PUBLIC INTEREST OF THE STATE IN UNFAIR TRADE PRACTICE PROCEEDINGS, AND TO PROVIDE AN EXCEPTION.

Be it enacted by the General Assembly of the State of South Carolina:

SECTION 1.        Article 1, Chapter 7, Title 1 of the S.C. Code is amended by adding:

39

Section 1-7-95.(A) Notwithstanding any other provision of law, when the Attorney General brings or defends an action in the name of the State of South Carolina pursuant to any power granted by common law, the Constitution of this State, or any provision of law, the Attorney General acts in the public interest of the State of South Carolina and not as the legal representative or attorney of any department or agency of state government, including the executive, legislative, and judicial branches, or any of the boards connected therewith. Such departments, agencies, or boards are not parties to these actions, and the documents or electronically stored information of such departments, agencies, or boards are not in the possession, custody, or control of the Attorney General.

(B) This section does not affect the ability of the Attorney General to bring or defend an action in a proprietary capacity on behalf of and representing any such department, agency, or board.

SECTION 2.        Article 1, Chapter 5, Title 39 of the S.C. Code is amended by adding:

Section 39-5-55. Proceedings instituted by the Attorney General under this article are proceedings in the public interest of the State of South Carolina for purposes of Section 1-7-95, except actions expressly brought under Section 39-5-140 in the name and on behalf of a department or agency of state government or any of the boards connected therewith.

SECTION 3.        Section 39-5-80 of the S.C. Code is amended to read:

Section 39-5-80. To accomplish the objectives and to carry out the duties

40

prescribed by this article, the Attorney General, in addition to other powers conferred upon him by this article, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, prescribe such forms and promulgate such rules and regulations as may be necessary, which rules and regulations shall have the force and effect of law;  provided, however, that none of the powers conferred by this article shall be used for the purpose of compelling any person to furnish testimony or evidence which might tend to incriminate him or subject him to a penalty or forfeiture;  and provided, further, that information obtained pursuant to the powers conferred by this article shall not be made public or disclosed by the Attorney General or his employees beyond the extent necessary for law-enforcement purposes in the public interest.  At the conclusion of the investigation or litigation, the Attorney General may return information obtained pursuant to the powers conferred by this article to the producing party, destroy the information, or maintain it in accordance with applicable document retention policies.

SECTION 4. This act takes effect upon approval by the Governor.

----XX----

41