No. 23-1849

# In the United States Court of Appeals for the Fourth Circuit

In re: South Carolina Department of Parks,
Recreation and Tourism
In re: Google Advertising Antitrust Litigation
State of Texas, et al. v. Google LLC

South Carolina Department of Parks,
Recreation, and Tourism,

Movant – Appellant

*v.*

Google LLC

Respondent – Appellee

On Appeal from the United States District Court
for District of South Carolina at Columbia

## Respondent – Appellee's Brief

Yetter Coleman LLP
 Jamie Alan Aycock
 Jason R. LaFond
 Ayla S. Syed
811 Main Street, Suite 4100
Houston, Texas 77002
713-632-8000

**Counsel for Respondent – Appellee**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1849          Caption: In re: South Carolina Department of Recreation and Tourism

Pursuant to FRAP 26.1 and Local Rule 26.1,

Google LLC
(name of party/amicus)

_____

who is _____respondent-appellee_____,  makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☑ YES ☐ NO

2. Does party/amicus have any parent corporations?                           ☑ YES ☐ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of
   Alphabet, Inc., a publicly traded company.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
   other publicly held entity?                                              ☐ YES ☑ NO
   If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?                    ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jamie A. Aycock _____        Date: __08/25/2023_____

Counsel for: Google LLC _____

Print to PDF for Filing

# TABLE OF CONTENTS

Page

Disclosure Statement

Table of Authorities ........................................................................... iii

Statement of Issues ......................................................................... xiii

Introduction .......................................................................................... 1

Statement of the Case ...................................................................... 2

I.     South Carolina Sued Google in Federal Court on Federal and State Claims. ................................................................................ 2

II.    South Carolina Passed Its Discovery Obligations Down to Its Component Agencies. ................................................................ 3

III.   The District Court Denied the Department's Motion to Quash. .................. 5

Summary of the Argument ............................................................... 6

Argument ............................................................................................. 8

I.     South Carolina Waived Any Sovereign Immunity the Department May Have from the Subpoena. ....................................... 8

       A.    South Carolina waived state sovereign immunity when it sued Google in federal court. ....................................................... 8

       B.    South Carolina's waiver includes the Department. ............................ 9

             1.    The State is the real party in interest here, so its waiver controls. .................................................. 9

             2.    The Department's efforts to escape South Carolina's waiver fail at every level. ................................................ 11

II.    State Sovereign Immunity Does Not Excuse the Department or Its Officials from Complying with the Subpoena. ........................ 23

       A.    A federal judicial subpoena is not a suit. .................................... 24

             1.    States are immune only from *suits*. ........................................... 25

             2.    Subpoenas are ancillary judicial mandates. ............................... 27

             3.    For centuries, no one considered subpoenas suits. .................... 30

       B.    If a federal judicial subpoena is a suit, it is the United States' suit. ................................................................ 37

C.      If the Subpoena were a private suit, *Ex parte Young* would allow it.......................................................................... 39

D.      *Russell* is irrelevant and wrong. ...................................... 43

       1.     *Russell* and the Department misapply Supreme Court precedent.................................................................... 44

       2.     *Russell* and the Department misapply sister-circuit precedent.................................................................... 47

       3.     *Russell* and the Department misunderstand the relevant history........................................................................ 50

Conclusion ........................................................................................51

Certificate of Compliance ............................................................... 53

Certificate of Service....................................................................... 54

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Alabama v. North Carolina,*
    560 U.S. 330 (2010) ............................................................ 38

*Alden v. Maine,*
    527 U.S. 706 (1999) ..................................................... 9, 19, 27

*Alfred L. Snapp & Son, Inc. v. Puerto Rico,*
    458 U.S. 592 (1982) ......................................................... 17, 18

*Alltel Commc'ns, LLC v. DeJordy,*
    675 F.3d 1100 (8th Cir. 2012) ......................................... 43, 50

*Amey v. Long*
    (1808), 103 Eng. Rep. 653 (KB) ................................. 32, 33, 38

*Arkansas v. Texas,*
    346 U.S. 368 (1953) ............................................. 10, 13, 14, 19

*Ex parte Ayers,*
    123 U.S. 443 (1887) ........................................... 12, 33, 45, 46

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988) ........................................................ 23, 38

*Bank of U.S. v. Halstead,*
    23 U.S. (10 Wheat.) 51 (1825) ............................................. 32

*Berrey v. Asarco Inc.,*
    439 F.3d 636 (10th Cir. 2006) ............................................. 18

*Blair v. United States,*
    250 U.S. 273 (1919) ............................................................ 33

*Blatchford v. Native Vill. of Noatak,*
    501 U.S. 775 (1991) ............................................................ 25

*Bonnet v. Harvest (U.S.) Holdings, Inc.,*
    741 F.3d 1155 (10th Cir. 2014) .................................. 40, 43, 50

*Boron Oil Co. v. Downie,*
    873 F.2d 67 (4th Cir. 1989) ................................................. 47

*Brown v. United States,*
    359 U.S. 41 (1959) ................................................................ 39

*La. ex rel. Caldwell v. Allstate Ins. Co.,*
    536 F.3d 418 (5th Cir. 2008) ............................................... 18

*Cent. Va. Cmty. Coll. v. Katz,*
    546 U.S. 356 (2006) (discussing *Hood*) .............................. 26

*In re Charter Oaks Assocs.,*
    361 F.3d 760 (2d Cir. 2004) ................................................ 20

*Cherokee Nation v. S. Kan. Ry.,*
    135 U.S. 641 (1890) .............................................................. 39

*Clinton v. Jones,*
    520 U.S. 681 (1997) .............................................................. 36

*Cohens v. Virginia,*
    19 U.S. (6 Wheat.) 264 (1821) ......................................*passim*

*State ex rel. Condon v. Hodges,*
    562 S.E.2d 623 (S.C. 2002) .................................................. 22

*Cooley v. S.C. Tax Comm'n,*
    28 S.E.2d 445 (S.C. 1943) .................................................... 16

*Cooper v. Aaron,*
    358 U.S. 1 (1958) ................................................................... 25

*In re Creative Goldsmiths of Wash., D.C., Inc.,*
    119 F.3d 1140 (4th Cir. 1997)................................................ 8

*State ex rel. Daniel v. Broad River Power Co.,*
    153 S.E. 537 (S.C. 1930) .............................................. 15, 22

*Decatur v. Paulding,*
    39 U.S. (14 Pet.) 497 (1840) ............................................... 48

*Delaney v. Reguls. of City of Phila.,*
    1 Yeates 403 (Pa. 1794) .............................................. 32, 34

*Dugan v. Rank,*
    372 U.S. 609 (1963).............................................................. 45

*EEOC v. Karuk Tribe Hous. Auth.,*
    260 F.3d 1071 (9th Cir. 2001) ............................................. 39

- iv -

*EPA v. Gen. Elec. Co.*,
  197 F.3d 592 (2d Cir. 1999) ............................................................ 47, 49

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
  34 F.3d 774 (9th Cir. 1994) .............................................................. 49

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
  535 U.S. 743 (2002) ....................................................................*passim*

*Fla. Dep't of State v. Treasure Salvors, Inc.*,
  458 U.S. 670 (1982) ..................................................... 41, 42, 43

*Frew v. Hawkins*,
  540 U.S. 431 (2004) .................................................................. 27, 30

*Gardner v. New Jersey*,
  329 U.S. 565 (1947) ........................................................................ 21

*Georgia v. Evans*,
  316 U.S. 159 (1942) ........................................................................19

*Green v. Mansour*,
  474 U.S. 64 (1985) .......................................................................... 40

*Gregory v. Ashcroft*,
  501 U.S. 452 (1991) ........................................................................ 20

*Gunter v. Atl. Coast Line R.R.*,
  200 U.S. 273 (1906) .................................................................. 27, 30

*Harris v. United States*,
  382 U.S. 162 (1965) ........................................................................ 39

*Hawaii v. Standard Oil Co. of Cal.*,
  405 U.S. 251 (1972) ........................................................................ 18

*Hickman v. Taylor*,
  329 U.S. 495 (1947) .......................................................................... 9

*Miss. ex rel. Hood v. AU Optronics Corp.*,
  571 U.S. 161 (2014) .................................................................. 17, 18

*Hutto v. Finney*,
  437 U.S. 678 (1978) .............................................................26, 27, 30

*Hutto v. S.C. Ret. Sys.*,
  773 F.3d 536 (4th Cir. 2014) .......................................................... xiii

*Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*,
603 F.3d 365 (7th Cir. 2010) (en banc) ............................................................ 42

*Kastigar v. United States*,
406 U.S. 441 (1972) ............................................................ 33

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ............................................................ 29

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.*,
535 U.S. 613 (2002) ............................................................*passim*

*Lee-Thomas v. Prince George's Cnty. Pub. Sch.*,
666 F.3d 244 (4th Cir. 2012) ............................................................ 11, 20, 21

*Link v. Wabash R.R.*,
370 U.S. 626 (1962) ............................................................ 12

*Litman v. George Mason Univ.*,
186 F.3d 544 (4th Cir. 1999) ............................................................6, 37

*Louisiana v. Sparks*,
978 F.2d 226 (5th Cir. 1992) ............................................................ 47

*Luxton v. N. River Bridge Co.*,
153 U.S. 525 (1894) ............................................................ 39

*Marbury v. Madison*,
5 U.S. (1 Cranch) 137 (1803) ............................................................31

*In re Marc Rich & Co., A.G.*,
707 F.2d 663 (2d Cir. 1983) ............................................................ 30

*Marks v. Bryant*,
14 Va. 91 (1809) ............................................................ 34

*Marks v. United States*,
430 U.S. 188 (1977) ............................................................ 42

*Massachusetts v. EPA*,
549 U.S. 497 (2007) ............................................................ 18

*McCook Metals LLC v. Alcoa, Inc.*,
249 F.3d 330 (4th Cir. 2001) ............................................................29, 37

*State ex rel. McLeod v. McInnis*,
295 S.E.2d 633 (S.C. 1982) ............................................................ 22

*McMellon v. United States*,
    387 F.3d 329 (4th Cir. 2004) (en banc) ............................................... 48

*Missouri v. Fiske*,
    290 U.S. 18 (1933) ..................................................................................... 29

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ............................................................................ 27, 30

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) .................................................................................. 47

*New York v. Facebook, Inc.*,
    549 F. Supp. 3d 6 (D.D.C. 2021) .........................................................19

*New York v. Meta Platforms, Inc.*,
    66 F.4th 288 (D.C. Cir. 2023) ...............................................................19

*In re NVR, LP*,
    189 F.3d 442 (4th Cir. 1999) .......................................................... 25, 44

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*,
    498 U.S. 505 (1991) .................................................................................. 49

*Ott v. City of Milwaukee*,
    682 F.3d 552 (7th Cir. 2012) .......................................................... 24, 46

*Owen v. City of Independence*,
    445 U.S. 622 (1980) ................................................................. xiii, 10, 13

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ................................................................................... 40

*Petty v. Tenn.-Mo. Bridge Comm'n*,
    359 U.S. 275 (1959) ............................................................................... 6, 8

*Pressed Steel Car Co. v. Union Pac. R.R.*,
    240 F. 135 (S.D.N.Y. 1917) ...................................................................31

*Ill. ex rel. Raoul v. Monsanto Co.*,
    2023 WL 4083934 (N.D. Ill. June 20, 2023) ..................................... 14

*Ristow v. S.C. Ports Auth.*,
    58 F.3d 1051 (4th Cir. 1995) ................................................................... 9

*Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*,
    511 F.3d 437 (4th Cir. 2007) ................................................................. 38

*Russell v. Jones,*
   49 F.4th 507 (5th Cir. 2022) ................................................... *passim*

*S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.,*
   535 F.3d 300 (4th Cir. 2008) ............................................... 9

*Sanchez-Espinoza v. Reagan,*
   770 F.2d 202 (D.C. Cir. 1985) ............................................. 48

*Seekright v. Bogan,*
   2 N.C. 176 (N.C. Super. L. & Eq. 1795) ....................... 32, 34

*Seminole Tribe of Fla. v. Florida,*
   517 U.S. 44 (1996) ............................................................ 39

*Sibbach v. Wilson & Co.,*
   312 U.S. 1 (1941) ......................................................... 37, 46

*The Siren,*
   74 U.S. (7 Wall.) 152 (1868) ............................................. 45

*Sloas v. CSX Transp. Inc.,*
   616 F.3d 380 (4th Cir. 2010) ............................................. 23

*Smith v. Cromer,*
   159 F.3d 875 (4th Cir. 1998) .......................................  47, 48

*South Carolina v. Purdue Pharma L.P.,*
   2019 WL 3753945 (S.C. Com. Pl. July 05, 2019) ............... 15

*Steel Co. v. Citizens for a Better Environment,*
   523 U.S. 83 (1998) ............................................................ 48

*Stewart v. North Carolina,*
   393 F.3d 484 (4th Cir. 2005) ........................................... xiii

*Tenn. Student Assistance Corp. v. Hood,*
   541 U.S. 440 (2004) ......................................................... *passim*

*Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g,*
   476 U.S. 877 (1986) .......................................................... 49

*Torres v. Tex. Dep't of Pub. Safety,*
   142 S. Ct. 2455 (2022) ...................................................... 37

*Torrey v. Fuller,*
   1 Mass. 524 (1805) ........................................................... 34

*United States ex rel. Touhy v. Ragen,*
    340 U.S. 462 (1951) ................................................................ 49

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.,*
    487 U.S. 72 (1988) ........................................................... 28, 29

*U.S. Dep't of Educ. v. NCAA,*
    481 F.3d 936 (7th Cir. 2007) ............................................... 29

*United States DOJ v. Ricco Jonas,*
    24 F.4th 718 (1st Cir. 2022) ................................................ 40

*United States v. ATT Co.,*
    461 F. Supp. 1314 (D.D.C. 1978) ........................................ 15

*United States v. Bryan,*
    339 U.S. 323 (1950) .............................................................. 23

*United States v. Burr,*
    25 F. Cas. 30 (C.C.D. Va. 1807) ..................................... 34, 51

*United States v. Burr,*
    25 F. Cas. 187 (C.C.D. Va. 1807) ........................................ 36

*United States v. Caldwell,*
    2 U.S. (2 Dall.) 333 (C.C.D. Pa. 1795) ........................ 34, 35, 43

*United States v. Morton Salt Co.,*
    338 U.S. 632 (1950) ..................................................28, 30, 38

*United States v. Reynolds,*
    345 U.S. 1 (1953) ................................................................ 23

*United States v. Smith,*
    27 F. Cas. 1192 (C.C.D.N.Y. 1806) ................................ 35, 36

*United States v. Texas,*
    143 U.S. 621 (1892) .............................................................. 37

*Va. Off. for Prot. & Advoc. v. Stewart,*
    563 U.S. 247 (2011) ................................................... xiv, 21, 41

*Verizon Md. Inc. v. Public Serv. Comm'n,*
    535 U.S. 635 (2002) .............................................................. 41

*Voss v. Luke,*
    28 F. Cas. 1302 (C.C.D.D.C. 1806) ................................... 29

*Waste Conversion, Inc. v. Rollins Env't Servs. (NJ), Inc.*,
  893 F.2d 605 (3d Cir. 1990) (en banc) .............................................. 28

*Weston v. City Council of Charleston*,
  27 U.S. 449 (1829) .......................................................... 28, 46

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ........................................................... 30, 33

*Wilson v. United States*,
  221 U.S. 361 (1911) ............................................................ 32

*Winn v. Patterson*,
  34 U.S. 663 (1835) ............................................................. 33

*Ex parte Young*,
  209 U.S. 123 (1908) ....................................................... 7, 39, 40

*Young v. U.S. ex rel. Vuitton et Fils S.A.*,
  481 U.S. 787 (1987) ........................................................... 28

## Constitutional Provisions, Statutes, Regulations, and Rules

U.S. Const.
    art. III, § 2, cl. 2 ............................................................. 10
    art. III, § 2 ................................................................... 32

5 U.S.C.
    § 301 ......................................................................... 49
    § 702 ......................................................................... 48

28 U.S.C.
    § 1332 ......................................................................... 9
    § 2072(a) ..................................................................... 38
    § 2072(b) ..................................................................... 23

40 C.F.R. §§ 2.401-406 ............................................................ 48

Fed. R. Civ. P. 26-37, 45 ........................................................... 8

Fed. R. Civ. P. 34(a)(1) ........................................................... 14

Fed. R. Civ. P. 34(c) .............................................................. 23

Fed. R. Civ. P. 45 ..................................... BA Cite AB4A1B 000298xiii, xiv, 24

Fed. R. Civ. P. 45(a)(1)(A)(i) ..................................................... 28

Fed. R. Civ. P. 45(a)(2) ......................................................... 29

Fed. R. Civ. P. 45(e) ............................................................. 43

Fed. R. Civ. P. 45(g) ............................................................ 29

S.C. Const. art. III, § 34 ........................................................17

S.C. Code
    § 1-7-80(1) ..................................................................... 21
    § 1-7-100(2) ...................................................................16
    § 1-7-160 ....................................................................... 21
    § 1-7-170(A) ...................................................................16
    § 51-1-60 ........................................................................ 9

**Other Authorities**

Maureen E. Brady, *The Forgotten History of Metes and Bounds*,
    128 Yale L.J. 872 (2019) ................................................... 32

Cong. Globe, 27th Cong., 3d Sess. 81 (1842) .......................... 33

1 Discovery Proceedings in Federal Court (3d ed.)
    § 1:1 .............................................................................. 8
    § 17:4 ............................................................................. 3

1 Max Farrand, Records of the Federal Convention (1911) .................................... 34

Fed. R. Civ. P. 34 advisory committee note (1991) ....................................31

Fed. R. Civ. P. 45 advisory committee note (2013) .................................... 29

Fed. R. Civ. P. 45 advisory committee note (1991) .................................... 39

The Federalist No. 39 .......................................................... 34

Louis L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity*,
    77 Harv. L. Rev. 1 (1963) ................................................ 34

Fleming James Jr., *Discovery*, 38 Yale L. J. 746 (1929) ......................................29, 33

*Justices 1789 to Present*, Supreme Court of the United States,
    https://www.supremecourt.gov/about/members_text.aspx............................ 35

Douglas Laycock, Modern American Remedies (2010) ......................................... 46

Perjury Statute of 1563, 5 Eliz. c. 9, art. VI (1563) ......................................31

James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward A First Amendment Right to Pursue Judicial Claims Against the Government*, 91 Nw. U. L. Rev. 899 (1997) ............................................................... 33

Restatement of the Law of American Indians § 4 (2022) ........................................ 49

S.C. Atty Gen. Op., 2011 WL 5304078 (Oct. 26, 2011) ..........................................16

2 Joseph Story, Commentaries on Equity Jurisprudence (1836)
§ 1482 ...............................................................................................................31
§ 1495 ...............................................................................................................31
§ 1499 ...............................................................................................................31

John R. Vile, The Men Who Made the Constitution (2013) ................................... 34

Charles Warren, *The First Decade of the Supreme Court of the United States*, 7 U. Chi. L. Rev. 631 (1940) .................................................................. 34

3 Wigmore on Evidence (2d ed. 1904)
§ 2190 ...............................................................................................................51
§ 2195 ...............................................................................................................46

3 Wigmore on Evidence § 2192 (3d ed. 1942) ....................................................... 23

*William Paterson*, Biographical Directory of the United States Congress, https://bioguide.congress.gov/search/bio/P000102 ....................................... 35

9A Charles A. Wright, et al., Federal Practice and Procedure § 2451 (3d ed.) ......................................................................................................... 38

# Statement of Issues

**1.** State sovereign immunity protects only the "States . . . as joint sovereigns."[1] But as sovereign, "a State can always waive its immunity,"[2] including by suing in federal court.[3] And a State's waiver "necessarily nullifie[s]" any sovereign immunity shared by "an arm of the State."[4]

South Carolina sued Google LLC and Alphabet Inc. (collectively "Google") in federal court and instructed Google to propound defensive discovery directly on its agencies. Even so, South Carolina's Department of Parks, Recreation, and Tourism ("Department") so far refuses to follow the resulting subpoena under Federal Rule of Civil Procedure 45 ("Subpoena"), instead invoking the same state sovereign immunity South Carolina waived by suing in federal court.

The first issue is:

> May the Department invoke sovereign immunity South Carolina has already waived?

---

[1] *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002) (quotation marks omitted).

[2] *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014).

[3] *Stewart v. North Carolina*, 393 F.3d 484, 489 (4th Cir. 2005).

[4] *Owen v. City of Independence*, 445 U.S. 622, 645 (1980).

**2.** If the Court finds that the Department's sovereign immunity is not waived, the Court must then resolve a series of issues about state sovereign immunity's interaction with Rule 45 subpoenas:

> **a.** State sovereign immunity bars only private suits against unconsenting States.[5] Is a Rule 45 subpoena a *suit*?
>
> **b.** Federal subpoenas are district court mandates carrying out federal law.[6] If a Rule 45 subpoena is a suit, is it a *private* suit?
>
> **c.** The *Ex parte Young* exception to state sovereign immunity allows private suits seeking to compel state officials to prospectively comply with federal law.[7] If a Rule 45 subpoena is a private suit, does the Subpoena fall under the *Ex parte Young* exception?

---

[5] *See Fed. Mar. Comm'n*, 535 U.S. at 755-56.

[6] *See generally* Fed. R. Civ. P. 45.

[7] *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254-55 (2011).

## Introduction

This appeal presents a straightforward question: May an arm of the State seek shelter in sovereign immunity the State has already waived? Common sense and binding precedent say *no*. When South Carolina sued Google in federal court, it consented to its lawsuit's complete determination, including obligations imposed by the Federal Rules of Civil Procedure. South Carolina expressly passed its discovery obligations onto its component agencies, and those agencies have no remaining sovereign immunity to draw from. The district court correctly rejected the Department's motion to quash and ordered the Department to produce the subpoenaed records. The Court should affirm.

The Department's appeal also raises questions about whether and how state sovereign immunity affects non-party discovery—questions of first impression dividing the circuits. Those questions are not determinative here, however, because even if the Department is a non-party, South Carolina's waiver of sovereign immunity controls.

If the Court reaches those contingent issues, however, it will find the overwhelming weight of precedent has it right: Discovery under the Federal Rules does not implicate state sovereign immunity. Sovereign immunity bars only private suits against States. The Subpoena is neither a suit nor private. And even if it were a private suit, the *Ex parte Young* exception to state sovereign immunity would allow it. Whatever path the Court chooses, it should affirm.

## STATEMENT OF THE CASE

### I. South Carolina Sued Google in Federal Court on Federal and State Claims.

Several States sued Google "in the Eastern District of Texas . . . , alleging that Google's digital advertising practices violate sections 1 and 2 of the Sherman Act, as well as the laws of their states." JA 510. Their claims "focused on the multiple roles played by [Google] in the purchase and sale of display ads on commercial websites and ad impressions on mobile apps." JA 510. The JPMDL transferred that suit to the Southern District of New York ("MDL court") for coordinated pretrial proceedings. JA 510.

After the transfer, South Carolina, represented by its Attorney General, moved to intervene "as a plaintiff state, in the public interest and on behalf of the people of South Carolina." JA 478-480. South Carolina's motion relied on the Federal Rules of Civil Procedure, arguing: "South Carolina's Motion to Intervene should be granted as it will allow South Carolina to resolve its disputes in a case that shares common questions of law and fact, is timely, and is permitted under the Federal Rules of Civil Procedure." JA 484. The MDL court granted the motion.

The States' second amended complaint then included South Carolina as a plaintiff. JA 177-190. South Carolina is still a plaintiff. JA 214-215. South Carolina and the other state plaintiffs expressly sue Google "in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy

of their respective States." JA 232. They expressly invoke federal jurisdiction over both their federal and state-law claims. JA 233.

The MDL court granted Google's motion to dismiss the States' Sherman Act claim premised on certain agreements between Google and Facebook and rejected various theories of liability. JA 508-509. The parties stipulated to the dismissal of the States' state-law claims to the extent those claims were based on those agreements and theories. JA 199-201. The state-law claims otherwise remain pending.

## II. South Carolina Passed Its Discovery Obligations Down to Its Component Agencies.

The MDL court stayed discovery while it considered Google's motion to dismiss. JA 175. Following the court's order on the motion to dismiss, the States pushed hard to require Google's productions on tight timelines and complained about "the snail's pace of discovery-related negotiations in the MDL." *See* JA 474-476. They have not been forthcoming with their own discovery, however.

Google served discovery on the States, including requests for the information the Subpoena covers. *See* JA 93-95. In response, the "State Plaintiffs objected on the basis that they do not have the authority to search for documents that are held by other state agencies or other governmental entities." JA 94. Rather than consume resources showing that States of course have the authority to get documents from their component agencies, Google worked with the States—serving subpoenas directly on the State agencies. *See* JA 94-95; *Cf.* 1 DISCOVERY PROCEEDINGS IN FEDERAL COURT § 17:4 (3d ed.) ("[A] subpoena under Rule 45 may be served

- 3 -

upon both party and nonparty witnesses."). The States endorsed "these subpoenas" as "the proper channels." JA 94-95.

Every agency and official subpoenaed—including in South Carolina—complied, except the Department and its general counsel. *See* JA 140-141.

The Subpoena issued from the MDL court to the Department through Emily Johnson, the Department's general counsel, requesting production nearby in Columbia, South Carolina.



SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  South Carolina Department of Parks, Recreation, and Tourism
Office of General Counsel Emily Johnson, 1205 Pendleton Street, Columbia, SC 29201

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Described in the attached Exhibit A.

| Place: Target Legal Process, c/o Ron Grossberg, 1625 Alascadero Drive, Columbia, SC 29206 | Date and Time: 02/26/2023 5:00 pm |

JA 32.

The Subpoena mandates production of records highly relevant to the States' claims and Google's defense. *See* JA 36-63. The States allege that Google engaged in anticompetitive behavior in its display advertising business. *See* JA 221-222. The Subpoena seeks records bearing directly on the Department's use of display advertising products and its assessment of Google's products as well as Google's competitors. For instance, the Subpoena seeks information on "whether and why [the Department] use[s] multiple Ad Buying Tools to purchase Display Advertising," as

well as documents sufficient to show the "Ad Tech Products that [the Department] [has] used during the Relevant time period." JA 61-62.

## III. The District Court Denied the Department's Motion to Quash.

The Department invoked federal jurisdiction in the District of South Carolina to challenge the Subpoena. JA 7-8. The Department's only argument was that South Carolina's sovereign immunity exempted the Department from compliance. JA 14-23.[8] Recognizing that South Carolina consented to federal jurisdiction, the Department argued South Carolina's consent does not encompass the Department. JA 24-27.

The district court denied the Department's motion, concluding that "it makes little sense to find a state's immunity can be imputed to its agencies but not its waiver of such immunity." JA 164.

The Department appealed. JA 166. Google agrees with the Department that the collateral order doctrine applies here and makes the district court's order rejecting sovereign immunity an appealable final judgment.

---

[8] The Department did not object on "trade secrets" grounds, *contra* Br. 4, and offers no support for its conclusory label.

## Summary of the Argument

**I.** State "sovereign immunity is an element of state sovereignty, not a categorical limitation on the federal judicial power." *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir. 1999). In exercising its sovereignty, "a State may waive" sovereign immunity "at its pleasure . . . by a general appearance in litigation in a federal court." *Petty v. Tenn.-Mo. Bridge Comm'n*, 359 U.S. 275, 276 (1959). In South Carolina, the State's Attorney General holds the reins to the State's litigation conduct. Exercising that control, he caused the State to make a general appearance in federal court to sue Google. That general appearance waived the State's sovereign immunity and consented to the obligations imposed by the Federal Rules of Civil Procedure, including Rule 45 requiring compliance with subpoenas.

The Department is an arm of the State. The Department has no existence—let alone sovereign immunity—apart from the State. South Carolina's suit against Google in federal court leaves the Department with no sovereign immunity to exert against the Subpoena. The Department's efforts to claw back sovereign immunity fail: Each proceeds as if South Carolina's Attorney General is the plaintiff in the State's suit against Google rather than the State itself. The Department's clumsy sleight of hand cannot overcome the record. *The State* sued Google, and it may not "selective[ly] use . . . 'immunity' to achieve litigation advantages." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002).

**II.** South Carolina's waiver means the Court need not decide whether sovereign immunity applies at all. Even so, should the Court consider the question, the Court will find that sovereign immunity offers no exemption from the Subpoena.

Despite sovereign immunity, States "may still be bound by some judicial actions without their consent." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004). State sovereign immunity bars only private suits against unconsenting States. But the Subpoena is not a suit. Rule 45 subpoenas do not assert claims against, resolve any dispute with, or seek any judicial remedy from their recipients. Subpoenas are ancillary judicial mandates exercising courts' judicial investigative powers. The lone circuit court decision holding otherwise misreads Supreme Court precedent, sister court precedent, and relevant history. In any event, because Rule 45 subpoenas issue from federal courts to vindicate federal judicial power, subpoenas are also not private. And even if subpoenas were private suits, the *Ex parte Young* exception to state sovereign immunity would apply here because the Subpoena issued to the Department through a state official and demands prospective compliance with federal law. *See Ex parte Young*, 209 U.S. 123 (1908).

Argument

## I.   South Carolina Waived Any Sovereign Immunity the Department May Have from the Subpoena.

South Carolina consented to federal determination of its suit against Google, including federal courts' collection of evidence. South Carolina's consent binds its components, including the Department.

### A.   South Carolina waived state sovereign immunity when it sued Google in federal court.

South Carolina waived its sovereign immunity when it made a "general appearance in litigation in a federal court" to sue Google. *Petty*, 359 U.S. at 276; *accord, e.g.*, *Lapides*, 535 U.S. at 622. The Department does not argue otherwise.

South Carolina's consent to jurisdiction includes consent to the obligations imposed by the Federal Rules of Civil Procedure: When a State sues in federal court, it "thereby consents to the federal forum's rules of procedure." *In re Creative Goldsmiths of Wash., D.C., Inc.*, 119 F.3d 1140, 1148 (4th Cir. 1997). For example, the State's suit waives its sovereign immunity from compulsory counterclaims under Rule 13. *See id.* at 1148-49.

The Federal Rules include significant discovery obligations—"one of the most significant innovations of the Federal Rules of Civil Procedure." 1 Discovery Proceedings in Federal Court § 1:1; *see* Fed. R. Civ. P. 26-37, 45. South Carolina has invoked federal discovery rules to its advantage. *See supra*, pp. 2-3. But "[d]iscovery . . . is not a one-way proposition. It is available in all types of cases

- 8 -

at the behest of any party, individual or corporate, plaintiff or defendant." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

South Carolina invokes the benefits of federal jurisdiction and so must meet these obligations under the Rules like anyone else.

### B.    South Carolina's waiver includes the Department.

As South Carolina goes, so goes the Department. The Department lacks any jural identity independent of the State.[9] So even if "subpoena immunity" were some defense, Br. 6, the Department has no such immunity independent of the State. The Department's dependence on South Carolina's sovereign immunity means the State's waiver is the Department's waiver.

### 1.    The State is the real party in interest here, so its waiver controls.

"[S]overeign immunity . . . bars suits against *States* but not lesser entities." *Alden v. Maine*, 527 U.S. 706, 756 (1999) (emphasis added). As it must, then, the Department asserts South Carolina's sovereign immunity. *Cf. Ristow v. S.C. Ports Auth.*, 58 F.3d 1051, 1053 (4th Cir. 1995) ("[T]he Ports Authority . . . is the alter ego of the State of South Carolina" and so "is entitled to Eleventh Amendment immunity from suit."). The Department asserts sovereign immunity as an "arm of the state." Br. 31.

---

[9] *See, e.g., S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 303-04, 308 (4th Cir. 2008) (concluding state agency is not a "citizen" under 28 U.S.C. § 1332 because South Carolina is not); *cf.* S.C. Code § 51-1-60 (powers of the Department; omitting power to sue or be sued).

What does it mean to be an "arm of the state"? The Supreme Court answered that question in *Arkansas v. Texas*, 346 U.S. 368 (1953). The Constitution makes States amenable to suit in the Supreme Court on claims by other States. U.S. Const. art. III, § 2, cl. 2. In *Arkansas v. Texas*, Texas challenged the Court's original jurisdiction, arguing that "the injured party" there was "the University of Arkansas, which does not stand in the shoes of the State." 346 U.S. at 370. The Court disagreed: "The University of Arkansas is her agency in the educational field—a branch or department of the State"—so "Arkansas [was] the real party in interest." *Id.* at 371. The Department's name is on the caption in this appeal, but South Carolina is the real party here.

What happens to the State's arm when the real party in interest waives sovereign immunity? The Supreme Court answered that question in *Owen v. City of Independence*, 445 U.S. 622 (1980). In discussing sovereigns' historical control of municipalities' immunity, the Court explained that "the municipality was an arm of the State . . . when acting in [its] 'governmental' or 'public' capacity." *Id.* at 645. But when the "State expressly or impliedly allows *itself*, or its creation, to be sued," "sovereign immunity" for the State's creation "is necessarily nullified." *Id.* at 645-46 (emphasis added). When the State waives its sovereign immunity, none is left for its arms.

- 10 -

### 2. The Department's efforts to escape South Carolina's waiver fail at every level.

The law described is straightforward and defeats the Department's claim of "subpoena immunity." Facing this clarity, the Department tries obfuscation. The Department spends the second-half of its brief arguing that South Carolina's "Attorney General did not waive [the Department's] immunity . . . by joining the antitrust case against Google." Br. 20 (capitalization altered and bolding removed); *see also* Br.32 ("[T]he Attorney General and [the Department] did not act unitarily in connection with the Attorney General's antitrust case."). But the Attorney General did not join the underlying suit at all. The *State* did.

The Attorney General is no more than South Carolina's lawyer. The Supreme Court in *Lapides* established that "a state attorney general's invocation of federal-court jurisdiction" on the State's behalf waives the State's immunity, no matter what state law says. 535 U.S. at 623; *see Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 250 (4th Cir. 2012). And even before *Lapides*, the Court had "consistently . . . found a waiver when a State's attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction." *Lapides*, 535 U.S. at 622. When acting as *the State's* lawyer, the Attorney General has broad authority under South Carolina law to bring *the State* into litigation, and his decision to do so waives *the State*'s sovereign immunity.

### a.    *The State* sued Google.

The Department's effort to escape South Carolina's waiver rests entirely on the faulty premise that the claims in the underlying lawsuit are the "Attorney General's . . . claims." Br. 24 (capitalization altered and bolding removed). But South Carolina's suit against Google is not the Attorney General's any more than the Department's appeal is Willoughby Humphrey & D'Antoni, P.A.'s. The Department confuses party with counsel.

The Attorney General has no claims against Google. South Carolina, however, has several, which it pursues as the State in its sovereign and *parens patriae* capacity.

| |
|---|
| **II.    PARTIES** |
| 31.    Plaintiff States, by and through their respective Attorneys General, bring this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective states under their statutory, equitable, or common law powers, and pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. |

JA 232.

| |
|---|
| **XI.    PRAYER FOR RELIEF** |
| 759.    Accordingly, the Plaintiff States request that the Court: |

JA 447.

The Attorney General is not a Plaintiff—the Attorney General is South Carolina's representative and agent. *See Link v. Wabash R.R.*, 370 U.S. 626, 634 (1962) (in "our system of representative litigation . . . each party is deemed bound by the

acts of his lawyer-agent"); *Ex parte Ayers*, 123 U.S. 443, 501 (1887) ("The state is a political corporate body" that "can act only through agents.").

As the Department takes pains to explain, waivers of sovereign immunity must be clear to be effective. Br. 21-24. "The relevant 'clarity' here," however, "must focus on the litigation act the State takes that creates the waiver," not the State's (or the Department's) "preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages." *Lapides*, 535 U.S. at 620. State sovereign immunity is not a tool for "States to achieve unfair tactical advantages." *Id.*[10]; *see Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 385 (1821) (Marshall, C.J.) (giving "great consideration" to the "mischievous consequences of the construction [of state sovereign immunity] contended for on the part of Virginia").

The controlling litigation act is *South Carolina* suing Google. The State's suit against Google in federal court is a clear waiver of *the State's* sovereign immunity and consent to the federal rules' application to *the State*. Even here in this appeal, the State is the real party in interest. *See Arkansas*, 346 U.S. at 341. And as an arm of the State, the Department is bound by the State's act. *See Owen*, 445 U.S. at 645-46.

None of the Department's tertiary arguments correctly names the party in the underlying proceeding, so none has merit. But even substituting the State, the

---

[10] For instance, States cannot be allowed to invoke federal jurisdiction offensively and hinder any defense by balkanizing their agencies to thwart effective discovery.

Department's arguments about custody of records, capacity, and compartmentalizing waiver fail on their own terms.

***Custody, possession, or control.*** According to the Department, "[i]t is undisputed that [the Department's] records are 'not within the possession, custody, or control of the Attorney General.'" Br. 24 (quoting JA 94); Fed. R. Civ. P. 34(a)(1). The Department's claim is both beside the point and incorrect.

The Department's claim is irrelevant for two reasons. One, Rule 34 does not limit the scope of the State's sovereign immunity waiver. Two, Rule 34 asks what is in the "*party's* possession, custody, or control," not what is in counsel's possession, custody, or control. Fed. R. Civ. P. 34(a)(1) (emphasis added). The Department's records necessarily are in the State's possession, custody, and control because the Department is the State. *See Arkansas*, 346 U.S. at 341.

The Department's claim is wrong because Google never agreed that the Attorney General lacks possession, custody, or control of the Department's records. The Department cites a letter from *counsel for the States*, not from Google. *See* JA 93-97. And even in that letter, the Attorneys General's supposed lack of possession, custody, or control of agency documents is just one of two independent grounds—the other being convenience—States' counsel offers for why Google should subpoena each agency individually. *See* JA 94.

Though the Attorney General may not have possession, it does have *control* over the Department's records for federal discovery purposes. *See, e.g.*, *Ill. ex rel.*

*Raoul v. Monsanto Co.*, 2023 WL 4083934, at *2 (N.D. Ill. June 20, 2023) ("[T]he Illinois Attorney General . . . must produce responsive documents possessed by state agencies."); *United States v. ATT Co.*, 461 F. Supp. 1314, 1331-34 (D.D.C. 1978) (similar, United States Attorney General).

Federal procedure is a question of federal law. But even under South Carolina's "own government structure," Br. 26, records needed in State litigation are "within the possession, custody or control of the Attorney General" even if those records reside with other state agencies, *South Carolina v. Purdue Pharma L.P.*, 2019 WL 3753945, at *1 (S.C. Com. Pl. July 05, 2019) (rejecting contrary federal decision under the federal rule for failing to appreciate South Carolina's structure); *see State ex rel. Daniel v. Broad River Power Co.*, 153 S.E. 537, 560 (S.C. 1930) (holding Attorney General may "exercise all such power and authority as public interests may, from time to time, require") (cleaned up).[11]

Indeed, were Attorney General Alan Wilson inclined, he could take over the Department's representation right now: "[T]he Attorney General's authority to 'conduct' the State's litigation is meant in the broadest sense of the word — i.e., oversight and control," and "[s]uch oversight and control . . . may arise at any stage of the litigation," including "prosecut[ing] an appeal over the affected agency's

---

[11] The Department (at 3, 24, 26) cites a proposed state bill to overrule *Purdue Pharma*'s result, but that bill cannot change the meaning of Federal Rule of Civil Procedure 34. Neither can "South Carolina's Freedom of Information Act." Br. 26-27.

objection." S.C. Atty Gen. Op., 2011 WL 5304078, at *15-16 (Oct. 26, 2011). And he could then agree to supply the subpoenaed records. *See Cooley v. S.C. Tax Comm'n*, 28 S.E.2d 445, 450-51 (S.C. 1943) (rejecting the efforts of two of the three members of the South Carolina Tax Commission to disapprove the settlement by the Attorney General of a suit brought against the Tax Commission); S.C. Code § 1-7-100(2) (providing Attorney General may "[b]e present at the trial of any cause in which the State is a party or interested and, when so present, shall have the direction and management of such prosecution or suit.").[12]

*Parens patriae and private enforcers.* The Department next argues that the State's waiver does not reach the Department because the State pursues Google in a "*parens patriae*" or "private" capacity. Br. 28-31. According to the Department, "[i]t is undisputed that the state plaintiffs brought the federal antitrust claims only as private enforcers not as sovereigns," and South Carolina's state-law claims in a "*parens patriae* role." Br. 29-30. The Department's arguments misstate the record, confuse several concepts, and are just wrong.

The Department's arguments fail at the start because their major premise—the capacity in which a State sues in federal court controls the reach of its resulting waiver—lacks any support. That idea conflicts with "the commonsense observation

---

[12] It is plausibly *because* the Attorney General has that power and is also counsel in the underlying litigation that the Department turned to outside counsel to prosecute the motion to quash—outside counsel that required *Attorney General* approval. *See* S.C. Code § 1-7-170(A).

that when judges must decide jurisdictional matters, simplicity is a virtue." *Miss. ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 172-73 (2014) (quotation marks omitted). When a State sues, the State's immunity is waived.

At any rate, South Carolina *is* suing in its sovereign capacity. The State says so in its complaint: "Plaintiff States bring this action . . . in their respective sovereign capacities." JA 262. The Department is in no position to retract the State's pleading.

In addition, South Carolina is pursuing state-law claims against Google, *see* JA 218-219, and "enforc[ing] a legal code, both civil and criminal," is "the exercise of *sovereign* power," *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601 (1982) (emphasis added). The Department says South Carolina could not be pursuing its state-law claims against Google in its sovereign capacity because its suit's purpose "is to *protect the citizens of South Carolina*." Br. 30. But the same is true for enforcing any state law. The general welfare of the citizenry motivates most laws. *Cf.* S.C. Const. art. III, § 34 (generally prohibiting special laws). Protecting "the health and welfare of its citizens" via state law is an exercise of "sovereign lawmaking powers," and "enforc[ing]" that state law vindicates the State's "sovereign interest[]." *Snapp*, 458 U.S. at 607.

The Department misses South Carolina's pursuit of sovereign interests because it misunderstands *parens patriae*, which is no more than a rule of standing. *See id.* at 600-01 (distinguishing the standing concept from other uses of the term). Even when not directly injured, a State may sue in federal court under federal law as *parens*

*patriae* to vindicate "the well-being of its populace." *Id.* at 602; *see Massachusetts v. EPA*, 549 U.S. 497, 519-20 (2007). But *parens patriae* does not operate to the exclusion of sovereignty.

A State suing as *parens patriae* is still suing as "a *sovereign State*," "not . . . a private individual." *Massachusetts*, 549 U.S. at 518 (emphasis added). For that reason, a State "is entitled to special solicitude in [the] standing analysis." *Id.* at 520. And only the State as sovereign possesses the quasi-*sovereign* interests necessary for *parens patriae* standing. *See Snapp*, 458 U.S. at 608 n.15; *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 258 (1972). Whatever the theory of standing, South Carolina as sovereign is still the plaintiff, so South Carolina's sovereign immunity is waived. *Cf. La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 431-32 (5th Cir. 2008) (holding State's litigation conduct as *parens patriae* waived sovereign immunity), *abrogated on other grounds by AU Optronics Corp.*, 571 U.S. 161; *Berrey v. Asarco Inc.*, 439 F.3d 636, 643-45 (10th Cir. 2006) (same for Indian tribe).

South Carolina does not lose its sovereign status "when bringing its federal claims for injunctive relief" under Section 16 of the Clayton Act. Br. 3, 22. The Department cites the MDL court explaining that "a plaintiff proceeding under section 16 does not act in the capacity of a sovereign but as a private enforcer," JA 593, but the Department confuses analogy with reality. As both Google and the MDL court made clear, the States sue under Section 16 as *parens patriae*, JA 503, JA 592, and so are necessarily suing as "a sovereign State." *Massachusetts*, 549 U.S. at 518.

- 18 -

The MDL court was applying laches and following the reasoning of *New York v. Facebook, Inc.*, which concluded that because States qualify as "persons" under Section 16,[13] "states, *like* private parties," are subject to laches. 549 F. Supp. 3d 6, 39 (D.D.C. 2021) (emphasis added), *aff'd*, 66 F.4th 288 (D.C. Cir. 2023). But the *Facebook* court recognized that the States are still States. *See id.* at 40 ("giving the States' interests significantly more weight than a private actor's would receive"). So again, the State sued and waived the State's sovereign immunity.

***Compartmentalizing***. Relying on a handful of district court decisions, the Department argues that "waiver by one arm of the state" is not "necessarily . . . a waiver by all." Br. 31. Here the State waived, so none of its arms has immunity left.

Even if it were a single arm that waived, however, the result would be the same. The district courts divvying up sovereign immunity among component agencies missed that sovereign immunity "bars suits against *States* but not lesser entities," *Alden*, 527 U.S. at 756, and that whatever arm of the State sues, the *State* is "the real party in interest" waiving immunity, *Arkansas*, 346 U.S. at 371. If a State allows its agencies to sue in federal court, it is allowing them to waive the State's sovereign immunity. *See Lapides*, 535 U.S. at 624.[14]

---

[13] *See Georgia v. Evans*, 316 U.S. 159, 162 (1942). Otherwise, States could not seek injunctions under Section 16 at all. *See New York v. Meta Platforms, Inc.*, 66 F.4th 288, 297 (D.C. Cir. 2023).

[14] Of course, the waiver would be limited to determining the suit, including compulsory counterclaims.

The Second Circuit's decision in *In re Charter Oaks Associates*, 361 F.3d 760 (2d Cir. 2004) (cited at Br. 32), is not to the contrary. The court did not resolve the issue the Department raises; it held that even if a waiver occasioned by one agency were limited, it still reached other agencies that shared an interest in the suit. *See id.* at 772. That rule would cover the Department, as the underlying suit challenges Google's display advertising business and the Department is a display advertising customer. *See supra*, pp. 4-5, and South Carolina has not foreclosed seeking damages for alleged harm to its agencies.

### b.     South Carolina law does not help the Department.

The Department's final push to escape South Carolina's waiver relies on the structure of South Carolina's executive branch. *See* Br. 24-28. But state sovereign immunity in federal court is a question of federal law. *See Lee-Thomas*, 666 F.3d at 250. And federal law gives effect to the litigation choices of state attorneys general, the vagaries of state law notwithstanding. *See id.* Anyway, South Carolina law gives its Attorney General far more power than the Department lets on.

According to the Department, "[f]ederal courts must defer to a state's determination of its own government structure and delineation of the powers of those who exercise government functions." Br. 24.[15] In fact, state government structure is immaterial. Because federal "jurisdictional rules should be clear," the Supreme Court

---

[15] In support, the Department cites *Gregory v. Ashcroft*, 501 U.S. 452 (1991). But *Gregory* did not put state structure above federal law; it merely applied a clear statement rule to the interpretation of certain statutes affecting States.

in *Lapides* overruled precedent that relied on state law and instead adopted a bright-line federal rule: "[F]ederal law . . . finds waiver through a state attorney general's invocation of federal-court jurisdiction." 535 U.S. at 621, 623; *see Lee-Thomas*, 666 F.3d at 250 (repeating *Lapides*'s rule); *see also Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 260 (2011) ("[L]imits on the Federal Government's power to affect the internal operations of a State . . . cannot be smuggled in under the Eleventh Amendment.").

Even putting *Lapides*'s rule aside, the Attorney General's control of South Carolina's litigation conduct still binds the Department. The rule before *Lapides* was that when a State seeks relief in federal court, its invocation of federal jurisdiction was a valid waiver so long as the office representing the State was authorized to bring the suit. *See Lapides*, 523 U.S. at 620; *Gardner v. New Jersey*, 329 U.S. 565, 575 (1947). The Department does not dispute that South Carolina law authorized the Attorney General to initiate and oversee the State's suit against Google.

The Department also vastly overstates its independence from the Attorney General. *See* Br. 25-27. For example, while the Department is not directly under the Attorney General in the State's org chart, the Subpoena's recipient—the Department's general counsel—is. *See* S.C. Code § 1-7-160 (providing generally that agency attorneys "at all times are under the supervision and control of the Attorney General except as otherwise provided by law"); *id.* § 1-7-80(1) ("departments are

forbidden to employ any counsel for any purpose except through the Attorney General and upon his advice").

Still more, as "the Chief law officer," the Attorney General is the last word on all things legal for the State. *Broad River Power*, 153 S.E. at 560. The office may "exercise all such power and authority as public interests may, from time to time, require, and may institute, conduct and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights." *Id.* (cleaned up). When the Attorney General brings an "action in the name of the State," the State's suit "speaks for all of its citizens." *State ex rel. McLeod v. McInnis*, 295 S.E.2d 633, 635 (S.C. 1982). Thus, the Attorney General's litigation prerogative controls even over the objection of other executive officers, including the Governor. *See State ex rel. Condon v. Hodges*, 562 S.E.2d 623, 626-28 (S.C. 2002) (holding Attorney General may sue the Governor in the Governor's official capacity). The Attorney General has ultimate control over the Department's litigation, *see supra*, pp. 14-16, so the Attorney General may waive the Department's immunity through its litigation choices, just as happened here.

## II.    State Sovereign Immunity Does Not Excuse the Department or Its Officials from Complying with the Subpoena.

"An appellee may defend, and this Court may affirm, the district court's judgment on any basis supported by the record." *Sloas v. CSX Transp. Inc.*, 616 F.3d 380, 389 n.5 (4th Cir. 2010). As the district court found, South Carolina's waiver makes a side show of the Department's arguments that sovereign immunity excuses state agencies from complying with Rule 45 subpoenas. Still, should the Court reach that question, it will find another reason to affirm: State sovereign immunity is no obstacle to federal courts' evidence gathering.

The "public . . . has a right to every man's evidence.'" *United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting 3 Wigmore on Evidence § 2192 (3d ed. 1942)). Giving life to that public right, the Federal Rules provide that a party or "a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c); *see id.* 45. Those rules are "as binding as any statute duly enacted by Congress." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988); *see* 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect."). And just as federal "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers" of the United States, *United States v. Reynolds*, 345 U.S. 1, 9-10 (1953), it cannot be abdicated to state agencies or officials.

State sovereign immunity bars private suits against unconsenting States; it does not interfere with federal courts' search for truth. Courts bring in evidence

through subpoenas. *See* Fed. R. Civ. P. 45. Subpoenas are not suits; they are court mandates ancillary to the suit from which they arise. Subpoenas are also not private; they issue from the federal judicial department and demand compliance with supreme federal law. And even if the Subpoena were a private suit, *Ex parte Young* allows it because it commands Department officials to prospectively comply with federal law.

In conflict with significant precedent and historical evidence, the Fifth Circuit's *Russell* decision—which the Department parrots—recently questioned the obligation of state agencies and officials to supply evidence when called on. But *Russell* is incomplete—the court did not consider several points made here—and is misguided in every step of its analysis. Rather than repeat *Russell*'s mistakes, the Court should follow the many decisions finding that Rule 45 subpoenas present "no risk of an unwarranted intrusion on state sovereignty." *Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012) (Wood, J.).[16]

### A.    A federal judicial subpoena is not a suit.

States are immune from certain suits. A federal subpoena is a judicial mandate fulfilling judicial prerogative. It is not and never has been a suit barred by sovereign immunity.

---

[16] *Accord, e.g.*, Br. 16-19 (citing cases).

### 1.     States are immune only from *suits*.

State sovereign immunity's breadth is not unlimited. Despite sovereign immunity, "States . . . may still be bound by some judicial actions without their consent." *Hood*, 541 U.S. at 446; *see In re NVR, LP*, 189 F.3d 442, 450 (4th Cir. 1999) ("[T]he Eleventh Amendment does not reach every variety of judicial proceeding."). Thus, in the same generation as the ratification of the Eleventh Amendment, the Supreme Court repudiated the notion that sovereign immunity excepted the States entirely from federal courts' reach. *See Cohens*, 19 U.S. at 405-12.

"Before [state sovereign immunity] applies, the federal judicial action must fairly be deemed a 'suit.'" *In re NVR*, 189 F.3d at 450. In turn, state sovereign immunity does not bar every exercise of federal power that favors a private citizen over a State because not every federal judicial action is a *suit*. *See, e.g.*, *Cohens*, 189 U.S. at 410 (a writ of error is not a "suit" for sovereign immunity purposes).

Confining state sovereign immunity to "suits" maintains federal supremacy, a constitutional value at least as important as States' residual sovereignty. Courts "have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779 (1991). Our structure includes federal supremacy, and "in a government acknowledgedly supreme, . . . all its departments [are] supreme," including its judicial department. *Cohens*, 19 U.S. at 414-15. States therefore are bound by federal judicial decrees. *See Cooper v. Aaron*, 358 U.S. 1, 18-

19 (1958). Even "costly" ones. *Hutto v. Finney*, 437 U.S. 678, 690 (1978). Applying state sovereign immunity beyond suits improperly limits federal judicial power.

*Hood* illustrates the line between suits sovereign immunity bars and undisturbed exercises of judicial power. Bankruptcy proceedings generally do not offend state sovereign immunity, even if they discharge state debt, because the court is exercising *in rem* jurisdiction. *See* 541 U.S. at 448-49. In *Hood*, a state agency nonetheless challenged a Congressionally enacted procedure by which a debtor could show undue hardship to discharge an otherwise nondischargeable student debt. The Court rejected that challenge.

The dispositive determination in *Hood* was that the challenged process was not some independent action seeking a remedy against the State but merely a necessary piece of a proceeding the federal court otherwise had full power to adjudicate. *See Hood*, 541 U.S. at 452-54. "As the dissenters in that case pointed out, it was at least arguable that the particular procedure that the debtor pursued to establish dischargeability of her student loan could have been characterized as a suit against the State rather than a purely *in rem* proceeding." *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 371 (2006) (discussing *Hood*). "But because the proceeding was merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction, [the Court] held that it did not implicate state sovereign immunity." *Id.*

The principle controlling in *Hood* was not new: One hundred years earlier, the Court exclaimed, "the proposition that the 11th Amendment . . . control[s] a court

- 26 -

of the United States in administering relief, although the court was acting in a matter ancillary to a decree rendered in a cause over which it had jurisdiction, is not open for discussion." *Gunter v. Atl. Coast Line R.R.*, 200 U.S. 273, 292 (1906) (allowing ancillary action to enforce judgment).

In between, the Court applied the same principle in *Hutto*. There, the district court enjoined state officials under *Ex parte Young*, and then, upon holding the officials in contempt of that injunction, ordered them to pay attorney fees out of state funds. *Hutto*, 437 U.S. at 683-86. The Court held that the draw on the State's treasury did not turn the contempt proceeding into a suit against the State because the proceeding and resulting award were "ancillary to the federal court's power to impose injunctive relief" on the officials. *Id.* at 691. The Court reaffirmed *Hutto* in *Missouri v. Jenkins*, where it held that, in ancillary proceedings, the States are fully subject to federal law like anyone else. *See* 491 U.S. 274, 279-82 (1989) ("the Eleventh Amendment did not apply"); *accord Frew v. Hawkins*, 540 U.S. 431, 441 (2004) ("[After] a federal court has entered a consent decree under *Ex parte Young*, the law's primary response to [a State's sovereignty] concerns has its source not in the Eleventh Amendment but in the court's equitable powers and the direction given by the Federal Rules of Civil Procedure.").

### 2.  Subpoenas are ancillary judicial mandates.

A Rule 45 subpoena is not a suit. A Rule 45 subpoena is not "the complaint[]" of a private person." *Alden*, 527 U.S. at 748. A Rule 45 subpoena is not "the

prosecution of some demand" against its recipient. *Cohens*, 19 U.S. at 407. A Rule 45 "subpoena is not . . . issued by a judicial officer in the resolution of a specific dispute" between anyone and the subpoena's recipient. *Waste Conversion, Inc. v. Rollins Env't Servs. (NJ), Inc.*, 893 F.2d 605, 608 (3d Cir. 1990) (en banc). A Rule 45 subpoena is not a "remedy." *Weston v. City Council of Charleston*, 27 U.S. 449, 464 (1829). And a Rule 45 subpoena alone has no "similarities to a traditional civil trial." *Hood*, 541 U.S. at 452; *see Fed. Mar. Comm'n v. S.C. Ports Auth.*, 535 U.S. 743, 752-60 (2002).

Instead, a Rule 45 subpoena is a district court mandate serving the district court's purposes and allowing the district court to fulfill its judicial functions. The "[f]ederal judicial power" includes "investigative powers" that are carried out through the "*judicial* subpoena." *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (emphasis added); *see Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 821 (1987) (Scalia, J.) (describing "subpoenas" as "orders necessary to the conduct of a trial"); *U.S. Dep't of Educ. v. NCAA*, 481 F.3d 936, 941 (7th Cir. 2007) ("Subpoenas ancillary to judicial proceedings are issued by courts . . . ."). Thus, Rule "45 grants a *district court* the power to issue subpoenas as to witnesses and documents." *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (emphasis added). "[E]very subpoena must . . . state the *court from which it issued*." Fed. R. Civ. P. 45(a)(1)(A)(i) (emphasis added). And, "disobedience constitutes contempt

- 28 -

of . . . *court.*" Fed. R. Civ. P. 45 advisory committee note (2013) (emphasis added); *see* Fed. R. Civ. P. 45(g).

If a subpoena is a proceeding at all, it is a proceeding ancillary to federal courts' power to adjudicate the suit from which the subpoena issues. *See McCook Metals LLC v. Alcoa, Inc.*, 249 F.3d 330, 334 (4th Cir. 2001) (holding an "ancillary discovery proceeding is, by its very terms, an extension of the underlying proceeding"); *NCAA*, 481 F.3d at 941.[17] Subpoenas are ancillary by nature—"Historically, courts of common law had no machinery to enforce a general discovery of testimony or production and inspection of documents before trial." Fleming James Jr., *Discover*y, 38 Yale L. J. 746, 746 (1929). But "the courts of chancery would . . . compel discovery as ancillary to a demand for relief which they had jurisdiction to grant." *Id.*; *see also Voss v. Luke*, 28 F. Cas. 1302, 1302 (C.C.D.D.C. 1806) (applying the Judiciary Act of 1789, explaining that courts' power to compel the giving of evidence is "necessary for the exercise of their jurisdiction").

As an ancillary mandate rather than a suit, a court's power to subpoena does not depend on the subpoena's target but on the underlying suit from which the subpoena issues. *Cf.* Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court

---

[17] A federal court has "ancillary" power "to enable [it] to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees," which is "separate" from its ancillary power "to permit disposition by a single court of claims that are . . . factually interdependent." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994); *cf. Missouri v. Fiske*, 290 U.S. 18, 24-28 (1933) (sovereign immunity bars ancillary claims).

where the action is pending."). "A federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction." *In re Marc Rich & Co., A.G.*, 707 F.2d 663, 669 (2d Cir. 1983); *accord U.S. Cath. Conf.*, 487 U.S. at 76; *Morton Salt*, 338 U.S. at 642.

Here, there is no dispute that the MDL court had power over the suit South Carolina pursues against Google when it issued the Subpoena. As the MDL court had the power to issue the Subpoena, "the law's primary response to [sovereignty] concerns has its source not in the Eleventh Amendment but in the court's equitable powers and the direction given by the Federal Rules of Civil Procedure." *Frew*, 540 U.S. at 441. The Department's state sovereign immunity, if any, is no shield. *See, e.g.*, *Hood*, 541 U.S. at 452-54; *Jenkins*, 491 U.S. at 279-82; *Hutto*, 437 U.S. at 691; *Gunter*, 200 U.S. at 292.

### 3.    For centuries, no one considered subpoenas suits.

An ancillary proceeding need not have historical pedigree to avoid sovereign immunity. *See Hood*, 541 U.S. at 452. Even so, subpoenas have plenty, and that history confirms they are not suits. Subpoenas are not "the type of proceedings from which the Framers would have thought the States possessed immunity when they agreed to enter the Union." *Fed. Mar. Comm'n*, 535 U.S. at 756.

Courts' power to compel non-parties to give evidence in civil cases has been a feature of Anglo-American law since at least the Perjury Statute of 1563,[18] but that compulsion has never been relief awarded as a result of a suit. *Cf.* Fed. R. Civ. P. 34 advisory committee note (1991) (distinguishing a subpoena from "an independent action"). The only discovery procedure even analogous to a civil lawsuit is the equitable bill of discovery. *See* 2 Joseph Story, Commentaries on Equity Jurisprudence § 1482 (1836). But those bills were limited to parties seeking discovery from *other parties*; they were unavailable for non-parties for the very reason that, after the Perjury Statute, "[c]ourts of Law [could] compel the attendance of witnesses." *Id.* § 1495 n.1 (quotation marks omitted); *see id.* § 1499; *cf. Pressed Steel Car Co. v. Union Pac. R.R.*, 240 F. 135, 136-37 (S.D.N.Y. 1917) (Hand, J.).

At the Founding, the Framers would have understood well that making the federal government supreme and creating a co-equal federal judicial department would require state (and federal) compliance with ancillary judicial orders to come forward with evidence. It was "too extravagant to be maintained," for example, that the Framers had given the judicial department the power to decide "all cases arising under the constitution" yet not the power to evaluate laws against the constitution, *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803)—even *state* laws, *Cohens*, 19 U.S. at 387-88. It is just as implausible that the Framers intended to hamstring the

---

[18] *See* 5 Eliz. c. 9, art. VI (1563) (establishing a ten-pound penalty for witnesses who fail to appear after being served "Proces out of any of the Courtes of Recorde w^th^in this Realme").

judicial department's collection of evidence needed to resolve the cases and contro-versies the Framers assigned to it:

> The right to resort to means competent to compel the pro-duction of written, as well as oral, testimony, seems essen-tial to the very existence and constitution of a court of common law, which receives and acts upon both descrip-tions of evidence, and could not possibly proceed with due effect without them.

*Wilson v. United States*, 221 U.S. 361, 372 (1911) (quoting *Amey v. Long* (1808), 103 Eng. Rep. 653, 658 (KB) (discussing English practice since the 1500s)); *cf. Bank of U.S. v. Halstead*, 23 U.S. (10 Wheat.) 51, 53 (1825) ("The authority to carry into complete effect the judgments of the Courts, necessarily results, by implication, from the power to ordain and establish such Courts.").

Consider property disputes "between citizens of the same state claiming lands under grants of different states." U.S. Const. art. III, § 2. Early "American record-ing laws and institutions" required that property "records of transfers [be] kept on file with central authorities." Maureen E. Brady, *The Forgotten History of Metes and Bounds*, 128 Yale L.J. 872, 891 (2019). It would be strange indeed for the Framers to provide judicial power to decide these disputes but not the power to issue subpoe-nas duces tecum for the very evidence needed for resolution. *Cf., e.g., Seekright v. Bogan*, 2 N.C. 176, 178 (N.C. Super. L. & Eq. 1795) (per curiam) ("[T]here is a coun-terpart of all the old patents and plats lodged *in the Secretary [of State]'s office*, and that might have been produced by force of a *duces tecum*, and would have been more satisfactory evidence than the paper now offered.") (emphasis added); *Delaney v.*

*Reguls. of City of Phila.*, 1 Yeates 403, 403-04 (Pa. 1794) (per curiam) (subpoena to Pennsylvania's surveyor general for records needed in a boundary dispute).

Any exemption for state offices would have been foreign to the Framers because exemptions were foreign—period. Authorities recognized the duty of *all* to produce evidence long before the Founding. *See Kastigar v. United States*, 406 U.S. 441, 443 (1972); *Blair v. United States*, 250 U.S. 273, 279-80 (1919).[19]

That right included evidence from non-party public offices. *See, e.g.*, *Winn v. Patterson*, 34 U.S. 663, 676-77 (1835) (describing the "common practice" of subpoenaing state offices for land records); *Amey*, 103 Eng. Rep. at 653 (sheriff's bailiff); *see also, e.g.*, Cong. Globe, 27th Cong., 3d Sess. 81, 89 (1842) (Senate complying with judicial subpoena). Subpoenas' far reach makes sense, as the subpoena power originated in the English Chancery, *see* James Jr., *supra*, at 746, where even claims against the Crown could be heard "without any requirement of the King's prior consent." James E. Pfander, *Sovereign Immunity and the Right to Petition: Toward A First Amendment Right to Pursue Judicial Claims Against the Government*, 91 Nw. U. L. Rev.

---

[19] Many of these historical examples involve subpoenas on individuals rather than agencies. But outside the *Ex parte Young* fiction, that distinction makes no difference. "The state is a political corporate body [that] can act only through agents," and "being the officers and agents of the state," they generally "hav[e] no personal interest in the subject-matter of" any subpoena, so the "state is . . . the real party." *Ex parte Ayers*, 123 U.S. at 491, 501; *accord Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

899, 914 (1997), *see* Louis L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity*, 77 Harv. L. Rev. 1, 6 (1963).

That reach did not shrink in the States under the Articles of Confederation. As the Department concedes, in the States of the Confederation, state courts could subpoena public offices despite the States' sovereign immunity "in their own courts." JA 107; *see United States v. Burr*, 25 F. Cas. 30, 34 (C.C.D. Va. 1807) (Marshall, C.J.).[20] As States' sovereignty never included any exemption from giving evidence, the "residuary . . . sovereignty" the States "retain[ed]," The Federalist No. 39 at 245 (Hamilton), could not have included that exemption.

A prominent Framer's own words confirm what history suggests. *See United States v. Caldwell*, 2 U.S. (2 Dall.) 333, 334 n.* (C.C.D. Pa. 1795) (Paterson, J.).

William Paterson—the key proponent of the New Jersey Plan that resulted in the United States Senate, executive appointment of the federal judiciary, and federal supremacy—was also a fierce proponent of State sovereignty.[21] Paterson helped draft New Jersey's constitution and, before the Convention, was the State's

---

[20] That subpoena power echoes in state cases just after the Constitution. *See, e.g.*, *Marks v. Bryant*, 14 Va. 91, 96-97 (1809) (Virginia's clerks of court); *Torrey v. Fuller*, 1 Mass. 524, 525 (1805) (Massachusetts's treasurer); *Seekright*, 2 N.C. at 178 (North Carolina's Secretary of State); *Delaney*, 1 Yeates at 403-04 (Pennsylvania's surveyor general).

[21] *See* 1 Max Farrand, Records of the Federal Convention 250-51 (1911); John R. Vile, The Men Who Made the Constitution 248-50 (2013).

- 34 -

Attorney General.[22] Following the Convention, he served as New Jersey's governor and then Senator.[23] And as a senator, Paterson drafted the Judiciary Act of 1789.[24] Then, George Washington appointed Paterson Associate Justice of the Supreme Court—less than a month after *Chisholm v. Georgia*.[25]

Riding circuit mere months after the Eleventh Amendment's ratification overruled *Chisholm*, Justice Paterson presided over a federal trial in Pennsylvania requiring testimony from two of the State's judges. Concurring in an order issuing an attachment for the judges subpoenaed as witnesses, Justice Paterson remarked:

> The law operates equally upon all; the high and low, the rich and poor. If we issue a subpoena to a Justice or a Judge, and it is not obeyed, we should be more strict in our proceedings against such characters, than against others, whose office did not so strongly point out their duty.

*Caldwell*, 2 U.S. at 334 n.*.

Showing no favor, Justice Paterson later expressed the same view when the witnesses sought were "James Madison, secretary of state," and "Robert Smith, secretary of the navy." *United States v. Smith*, 27 F. Cas. 1192, 1228 (C.C.D.N.Y.

---

[22] *William Paterson*, Biographical Directory of the United States Congress, https://bioguide.congress.gov/search/bio/P000102 (last visited Oct. 27, 2023).

[23] *Id.*

[24] Charles Warren, *The First Decade of the Supreme Court of the United States*, 7 U. Chi. L. Rev. 631, 631 (1940).

[25] *See Justices 1789 to Present*, Supreme Court of the United States, https://www.supremecourt.gov/about/members_text.aspx (last visited Oct. 27, 2023).

1806). Defense counsel in *Smith* stood up to counter the prosecution's argument "that those witnesses could not be coerced to appear," but Justice Paterson cut him off: "You may save yourself the trouble of arguing that point; the witnesses may undoubtedly be compelled to appear." *Id.* at 1218.[26] No office high or low was immune from federal judicial subpoenas.

Following Justice Paterson's lead, Chief Justice Marshall (a delegate to the Virginia ratifying convention) soon concluded that not even the highest office was exempt. During the 1807 trial of Aaron Burr, Marshall imported "the power of a court of chancery" and issued "a subpoena duces tecum . . . to the president of the United States" for a letter in Thomas Jefferson's possession. *United States v. Burr*, 25 F. Cas. 187, 191 (C.C.D. Va. 1807). Marshall remarked, "That the president of the United States may be subpoenaed, and examined as a witness, and required to produce any paper in his possession, is not controverted." *Id.* And absent some valid objection of executive privilege, the President "must stand, as respects that paper, in nearly the same situation with any other individual." *Id.* Ever since, "[s]itting Presidents have responded to court orders to provide testimony and other information with sufficient frequency that such interactions between the Judicial and Executive Branches can scarcely be thought a novelty." *Clinton v. Jones*, 520 U.S. 681, 704 (1997).

---

[26] The Court refused attachment, finding that the witnesses were unnecessary.

This history is conclusive: The federal judicial subpoena power has always reached all and—at least until *Russell*—no court had treated a judicial subpoena as a suit against a State barred by state sovereign immunity.[27]

### B.    If a federal judicial subpoena is a suit, it is the United States' suit.

"[T]he structure of the original Constitution itself reflects a waiver of States' sovereign immunity" from "suits by the United States against a State." *Torres v. Tex. Dep't of Pub. Safety*, 142 S. Ct. 2455, 2462 (2022) (cleaned up). So state sovereign immunity "does not preclude the federal government from bringing suit against states in federal court to ensure compliance with federal law." *Litman*, 186 F.3d at 550. Indeed, "the permanence of the Union" requires that limit on state sovereignty. *United States v. Texas*, 143 U.S. 621, 645 (1892). For "[t]he general government, though limited as to its objects, is supreme with respect to those objects." *Cohens*, 19 U.S. at 381.

If judicial subpoenas are suits, they are suits by the United States carrying out federal law. "Congress has undoubted power to regulate the practice and procedure of federal courts, and may exercise that power by delegating to this or other federal courts authority to make rules." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 10 (1941)

---

[27] The Department's motion to quash in the District of South Carolina did not change the nature of the Subpoena. It too was ancillary to the underlying suit. *See McCook Metals*, 249 F.3d at 334. At any rate, *the Department* sought relief in federal court and thereby consented to judicial resolution of the Subpoena's validity. It cannot now complain that the district court accepted the invitation and directed it produce the subpoenaed documents.

(footnote omitted). Under federal law, "[t]he Supreme Court shall have the power to prescribe general rules of practice and procedure . . . for cases in the United States district courts." 28 U.S.C. § 2072(a). And those rules are "as binding as any statute duly enacted by Congress." *Bank of Nova Scotia*, 487 U.S. at 255.

Prior to the Founding, the judicial subpoena from courts of law was the method "by which writ the King commanded" witnesses to testify or produce documents. *Amey*, 103 E.R. at 654. Through the Rules Enabling Act and Rule 45, those sovereign commands now come from federal courts. A Rule 45 "'subpoena' is a mandate lawfully issued ***in the name of the court***, . . . to compel the attendance of witnesses and the production of documents ***so that the court*** may have access to all of the available information for the determination of controversies ***before it***." 9A Charles A. Wright, et al., Federal Practice and Procedure § 2451 (3d ed.) (emphases added); *see supra*, pp. 27-30.[28] Here, the United States through its judicial department is commanding the Department to disclose its records. The structure of the Constitution requires the Department's compliance.

That an attorney may sign out a subpoena does not change its nature—a subpoena is still an exercise of "judicial . . . investigative powers." *Morton Salt*, 338 U.S. at 642; *see also Alabama v. North Carolina*, 560 U.S. 330, 354-56 (2010) (holding mere involvement of non-sovereign actor does not change the nature of the judicial power

---

[28] "[T]he word 'person' in Rule 45 . . . includes juristic persons like corporations and governments as well." *Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 445 (4th Cir. 2007).

exercised).  The federal government may authorize "a fit instrumentality to acomplish the public objects contemplated" by federal law. *Cherokee Nation v. S. Kan. Ry.*, 135 U.S. 641, 657 (1890) (eminent domain); *accord, e.g.*, *Luxton v. N. River Bridge Co.*, 153 U.S. 525, 530 (1894). An attorney signing out a subpoena fits that bill.

"[T]he attorney acts as an officer of the court in issuing and signing subpoenas." Fed. R. Civ. P. 45 advisory committee note (1991). "Rule 45 put[s] the attorney in a position similar to that of [an] administrative agency, as a *public officer* entitled to use the court's contempt power to investigate facts in dispute." *Id.* (emphasis added).[29] Like a grand jury composed of private citizens, the attorney signing out a subpoena is "an appendage of the court, powerless to perform its investigative function without the court's aid." *Brown v. United States*, 359 U.S. 41, 49 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965). And so "defiance of a subpoena is nevertheless an act in defiance of a court order." Fed. R. Civ. P. 45 advisory committee note (1991).

## C.    If the Subpoena were a private suit, *Ex parte Young* would allow it.

Along with a suit by the federal government, another "method[] of ensuring the States' compliance with federal law" is a private "suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 71 n.14 (1996) (citing *Ex parte Young*).

---

[29] *Cf. EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1075 (9th Cir. 2001) (tribal sovereign immunity does not apply to federal administrative subpoenas).

"[W]hen a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984).

A judicial subpoena is not a suit and is not private. But if the Subpoena were a private suit, the *Ex Parte Young* exception would allow it: The Subpoena issued to the Department through Emily Johnson, the Department's general counsel, requiring prospective compliance with federal law by Johnson and other Department officials. "The service of a federal subpoena on an employee of an entity that is protected by sovereign immunity such as the State . . . is neither a suit, nor one against the entity." *United States DOJ v. Ricco Jonas*, 24 F.4th 718, 727 (1st Cir. 2022); *see Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1162 n.1 (10th Cir. 2014) ("neither a state nor a tribe would appear to be immune from a discovery request served on the appropriate agency official").

**1.** "The state has no power to impart to" any official "any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160. "*Ex parte Young* gives life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68 (1985). So while a state official is the State,[30] sovereign immunity does not bar a private suit naming a state official and compelling compliance with the supreme authority of the United States. *See, e.g.*, *id.* To escape sovereign immunity, then, a private suit must only name a state official in her official capacity, posit "an

---

[30] *See supra*, p. 33 n.19.

ongoing violation of federal law," and seek "relief properly characterized as prospec-tive." *Verizon Md. Inc. v. Public Serv. Comm'n*, 535 U.S. 635, 645 (2002).

A private suit to compel state officials to follow federal law and produce rec-ords for inspection and copying satisfies those requirements. The Supreme Court held exactly that in *Stewart*:

> There is no doubt VOPA's suit satisfies [*Verizon Mary-land*'s] straightforward inquiry. It alleges that respond-ents' refusal to produce the requested medical records vi-olates federal law; and it seeks an injunction requiring the production of the records, which would prospectively abate the alleged violation.

563 U.S. at 256.

The Supreme Court reached a similar result in *Florida Department of State v. Treasure Salvors, Inc.*, 458 U.S. 670 (1982). There, as part of an *in rem* admiralty pro-ceeding, "a federal court attempted to arrest property held by two state officials and bring it within the jurisdiction of the court." *Id.* at 673 (plurality op.). The Court rejected a Florida agency's reliance on sovereign immunity to quash judicial service on its officials. *See id.* at 680-82 (plurality op.); *id.* at 701 (Brennan, J., concurring in the judgment in part). The controlling opinion by Justice Stevens and joined by Chief Justice Berger, and Justices Marshall and Blackmun reasoned that where a state of-ficial has no statutory basis—i.e., a state statute not in conflict with federal law—to resist turning over property to the court, his resistance "is not action of the

sovereign." *Id.* at 692-97 (plurality op.).[31] "The Eleventh Amendment thus did not bar the process issued by the District Court to secure possession of [property] by the named state officials." *Id.* at 699 (plurality op.).

**2.** *Stewart* and *Treasure Salvors* show sovereign immunity does not bar a federal subpoena directing a state official in her official capacity to produce designated documents, electronically stored information, or tangible things in the State's possession, custody, or control.

Here, the Subpoena issued to the Department through a state official:



JA 32. The Subpoena commands prospective compliance by myriad Department officials. *See* JA 57 (defining "You").

---

[31] Justice Stevens' "plurality . . . constituted the holding of the Court and provide[s] the governing standards" because it relies on the "narrowest grounds." *Marks v. United States*, 430 U.S. 188, 194 (1977); *see* 458 U.S. at 701 (Brennan, J., concurring in the judgment in part). Moreover, the remaining justices' dissent agreed that sovereign immunity does not bar suits for possession of property "against individual agents" that do "not purport to conclude the rights of the Government" to the property. *See Treasure Salvors*, 458 U.S. at 706 (White, J., dissenting). Permitting persons or courts "to inspect and copy . . . records would not infringe on [state agencies'] otherwise rightful ownership and possession of the records." *Ind. Prot. & Advoc. Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 n.5 (7th Cir. 2010) (en banc).

☑ *Production:* **YOU ARE COMMANDED to produce** at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

> Described in the attached Exhibit A.

| Place: | Date and Time: |
| --- | --- |
| Target Legal Process, c/o Ron Grossberg, 1625 Alascadero Drive, Columbia, SC 29206 | 02/26/2023 5:00 pm |

JA 32. And that compliance is required by federal law. *See* Fed. R. Civ. P. 45(e) (setting forth "Duties in Responding to a Subpoena"). Thus, any refusal to obey the Subpoena "is not action of the sovereign." *Treasure Salvors*, 458 U.S. at 697 (plurality op. (quotation marks omitted).

### D. *Russell* is irrelevant and wrong.

Building on outlier dicta,[32] the Fifth Circuit in *Russell v. Jones* held that sovereign immunity barred federal judicial subpoenas to certain state judges to gather evidence necessary for adjudicating a civil rights claim. 49 F.4th 507, 512 (5th Cir. 2022); *but see Caldwell*, 2 U.S. at 333-34. The Department asks the Court to "follow *Russell* and hold that states are immune from subpoenas in federal court." Br. 20.

*Russell* is wrong, but first, it is irrelevant. The only question before the court was whether a judicial subpoena is a "suit." 49 F.4th at 513. The parties did not raise, and the court did not consider, whether—if a judicial subpoena is a suit—it is a "private" suit or whether the *Ex parte Young* exception applied. *See id.* at 518 n.13; *Russell* Response Br., 2021 WL 6197790. The Subpoena is not a private suit, but if it were,

---

[32] *See Bonnet*, 741 F.3d at 1161; *Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1104-05 (8th Cir. 2012).

*Ex parte Young* would allow it. *See supra*, pp. 37-43. *Russell* thus could not help the Department even if it were correctly decided and even if South Carolina had not waived the Department's immunity.

*Russell* was not correctly decided. *Russell* misapplies Supreme Court precedent, misapplies sister-circuit precedent, and misunderstands the relevant history. Nothing in *Russell* or the Department's related arguments persuasively suggests a judicial subpoena is a suit.

### 1.    *Russell* and the Department misapply Supreme Court precedent.

A wealth of Supreme Court precedent both establishes that state sovereign immunity "does not reach every variety of judicial proceeding" and delineates when a "federal judicial action [may] fairly be deemed a 'suit.'" *In re NVR*, 189 F.3d at 450; *see supra* pp. 24-27. *Russell* cites none of that precedent—not *Hood*, not *Hutto*, not *Weston*, not *Cohens*—none. *Russell* looked in the wrong place because it answered the wrong question.

*Russell* at first recognizes the question before the court—are "third-party subpoenas . . . 'suits' to which sovereign immunity attaches"? 49 F.4th at 513. But then reframes it: "In other words, [does] sovereign immunity only appl[y] to *defendants*"? *Id.* The court's reframing caused it to answer a totally different question—when is a suit naming an individual really *against the State*. *See id.* at 513-15. The Supreme Court precedent on *that* question, however, is not relevant until there is a suit. *Cf. supra*, pp 39-43 (discussing *Ex parte Young* as alternative grounds to affirm).

*Russell*'s reliance on *Dugan v. Rank*, 372 U.S. 609 (1963), highlights its mistake. *Dugan* "echo[ed]" "earlier cases," for the "general rule . . . that a suit *is against the sovereign* if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Russell*, 49 F.4th at 514 (quoting *Dugan*, 372 U.S. at 620 (emphasis added) (internal quotation marks omitted)). In *Dugan*, however, none disputed the action was an "injunction suit"—hence the focus on "the judgment['s]" effect—so the Court never considered whether there was a suit in the first place. 372 U.S. at 610, 620-23.[33] The Department likewise misapplies *Dugan* and its progeny. *See* Br. 10-11.

The Department raises up semantics to obscure the cart it put before the horse. Following *Russell*'s lead, the Department plucks the word "process" from various Supreme Court decisions and from there reasons, a subpoena is process, ergo, a suit. *See* Br. 12-13; *Russell*, 49 F.4th at 514-15. But sovereign immunity does not bar all process against a State. *See supra*, pp. 24-27.

Sovereign immunity bars process that seeks to remedy a wrong—"complaints," however made. *Ex parte Ayers*, 123 U.S. at 505; *Fed. Maritime Comm'n*, 535 U.S. at 760. The Department partially quotes *Cohens*' definition of "suit" as "'the prosecution, or pursuit, of some claim, demand, or request,' . . . by which one makes

---

[33] Unlike *Russell*, *The Siren* (cited at *Russell*, 49 F.4th at 514) distinguishes "direct suits," which "cannot be maintained," from other actions against sovereigns. 74 U.S. (7 Wall.) 152, 154 (1868).

'the lawful demand of one's right.'" Br. 12 (quoting *Cohens*, 19 U.S. at 407-08). But the omitted portion of *Cohens*' definition makes clear that the *process* sovereign immunity blocks is that "whereby [a] *remedy* is obtained" for a "*wrong*." *Cohens*, 19 U.S. at 407 (emphases added; quotation marks omitted); *accord Weston*, 27 U.S. at 464 ("any proceeding . . . by which an individual pursues that *remedy* . . . which the law affords him" (emphasis added)); *Ex parte Ayers*, 123 U.S. at 502 ("[T]here is no remedy by suit against the state itself."). A "remedy is anything a court can do for a litigant who has been wronged or is about to be wronged." Douglas Laycock, Modern American Remedies 1 (2010). "Remedies give meaning to obligations imposed by *substantive law*." *Id.* (emphasis added); *accord Sibbach*, 312 U.S. at 14.

Judicial subpoenas are not private complaints and do not remedy any private wrongs. *See* 3 Wigmore on Evidence § 2195 (2d ed. 1904) ("The duty to give testimony is a duty to the State"). Thus, "[n]o state sovereign immunity issues are triggered by this subpoena because no ultimate relief is being sought from" the Department. *Ott*, 682 F.3d at 556. Subpoenas are judicial mandates aiding the federal courts' exercise of federal judicial power. *See supra*, pp. 27-30. Because judicial subpoenas on state agencies do not subject States to the indignity of "answer[ing] the complaints of private persons," *Fed. Mar. Comm'n*, 535 U.S. at 760, States' interests are indeed "less interesting when a sovereign is served with a *subpoena duces tecum* instead of a complaint." *Russell*, 49 F.4th at 515.

Finally, *Russell* turns to *Mitchell v. Forsyth*, 472 U.S. 511 (1985), for the proposition that "sovereign immunity is an immunity from . . . discovery." 49 F.4th at 515. But all *Mitchell* says is that a litigant may not proceed to discovery until he has a viable suit. *See* 472 U.S. at 526. *Mitchell* just confirms that discovery is *ancillary*—no suit, no discovery. *See supra*, pp. 27-30.

> **2.**   ***Russell* and the Department misapply sister-circuit precedent.**

Having answered the wrong question, *Russell* and the Department then turn to lower court decisions to support the result. 49 F.4th at 516-19; Br. 15-18. None do.

They turn first to cases involving federal agencies' sovereign immunity from subpoenas. 49 F.4th at 516-17. But none of the cited decisions considers whether a subpoena is a suit. *See, e.g.*, *Boron Oil Co. v. Downie*, 873 F.2d 67, 70-71 (4th Cir. 1989) (considering only whether subpoena issued to official was against the United States); *EPA v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir. 1999) (same); *Louisiana v. Sparks*, 978 F.2d 226, 235 (5th Cir. 1992) (same).

In any event, the Supreme Court has expressly distinguished the United States' immunity from "the State's sovereignty vis-á-vis the Federal Government." *Lapides*, 535 U.S. at 623. The decisions cited exemplify the difference. Take *Boron*, which involved a *state* judicial subpoena issued to a *federal* official demanding an act contrary to *federal* regulations. *See* 873 F.2d at 69.[34] As this Court has explained,

---

[34] Several other decisions *Russell* relies on track this fact pattern. *See* 49 F.4th at 516.

*Boron*'s application of sovereign immunity ultimately "reflect[ed] the principle of federal supremacy." *Smith v. Cromer*, 159 F.3d 875, 880 (4th Cir. 1998); *contra Russell*, 49 F.4th at 517 n.11 (reading *Boron* differently). "[T]he doctrine of sovereign immunity . . . preclude[s] state courts, or a federal court on removal, from reviewing federal agency action." *Smith*, 159 F.3d at 880. With federal judicial subpoenas to state agencies and officials, however, federal supremacy points the opposite direction. *See supra*, pp. 25-26, 37-43.

The decisions involving *federal* subpoenas to federal agencies are similarly unhelpful. None had to grapple fully with sovereign immunity, let alone with whether a Rule 45 subpoena is a suit, because Congress waived sovereign immunity for nonmonetary actions. *See* 5 U.S.C. § 702.

In any case, federal sovereign immunity is not limited to suits. *See Smith*, 159 F.3d at 880. A wellspring of a sovereign's immunity in its own courts is separation of powers. *See Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 207 n.5 (D.C. Cir. 1985) (Scalia, J.)[35]; *see also McMellon v. United States*, 387 F.3d 329, 341-42 (4th Cir. 2004) (en banc). Judicial mandates (like subpoenas) to executive officers and agencies necessarily raise separation of powers concerns. *See, e.g.*, *Decatur v. Paulding*, 39 U.S. (14 Pet.) 497, 516 (1840) ("The interference of the Courts with the performance of the ordinary duties of the executive departments of the government, would be

---

[35] Abrogated on other grounds by *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998).

productive of nothing but mischief . . . .”). Each of the cited decisions involves a conflict between the Branches—judicial power under Rule 45 versus executive agency power under the federal Housekeeping Statute.[36] *See Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778-79 (9th Cir. 1994); *see also Gen. Elec.*, 197 F.3d at 597. Those concerns were absent in *Russell* and are absent here.

*Russell* and the Department also look to two decisions applying tribal immunity. *See* 49 F.4th at 517-19; Br. 15-18. But tribal “immunity is not congruent with that which the . . . States, enjoy.” *Three Affiliated Tribes of Fort Berthold Rsrv. v. Wold Eng'g*, 476 U.S. 877, 890 (1986). Rather, tribal immunity “is subject to plenary federal control and definition.” *Id.* at 891. Tribal sovereign immunity serves broad federal goals—“encouraging tribal self-sufficiency and economic development.” *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 510 (1991). Thus, inherent in decisions applying tribal immunity is the federal-tribal “trust relationship” that includes “protect[ing] . . . Indian tribes from outsiders” and “preserv[ing] tribal self-government, a measured separatism largely free from . . . non-Indian interference yet bolstered by the support of the federal government.” RESTATEMENT OF THE LAW OF AMERICAN INDIANS § 4 cmt. c-d

---

[36] The “head of an Executive department . . . may prescribe regulations for the . . . the conduct of its employees, . . . and the custody, use, and preservation of its records, papers, and property.” 5 U.S.C. § 301. Under that statute, federal agencies issue regulations controlling responses to subpoenas. *See, e.g.*, 40 C.F.R. §§ 2.401-406; *see also United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951).

(2022). Both decisions cited relied on the importance of these federal policies to de-fine tribal sovereign immunity. *See Alltel Commc'ns, LLC v. DeJordy*, 675 F.3d 1100, 1105 (8th Cir. 2012); *Bonnet*, 741 F.3d at 1160-61.

Even more, *Alltel* and *Bonnet* contain their own errors. Both presaged *Russell* by treating anything unfavorable to the State as a suit. *Alltel* gets there by overreading *Dugan. See* 675 F.3d at 1102-03; *supra,* p. 45. And *Bonnet* concludes that a subpoena is a "suit" because it may result in "an adversary process," 741 F.3d at 1160-61, a conclusion that directly conflicts with *Hood*, *see* 541 U.S. at 451-52 (state sovereign immunity did not bar "adversary proceeding"); *see also*, *supra*, pp. 45-46 (discussing "process").

### 3.  *Russell* and the Department misunderstand the relevant history.

Finally, history. The Department claims "[t]wo hundred years of prece-dent confirms that states are immune from federal court subpoenas." Br. 11 (under-lining omitted). But the relevant history shows just the opposite—sovereign immun-ity was never a bar from judicial subpoenas. *See supra*, pp. 30-37.

*Russell* at least acknowledges history is not on its side. *See* 49 F.4th at 519. But the court handwaves this history because none of the historical subpoena recipients ever *raised sovereign immunity*. *See id.* The court heard hoof beats and thought zebra. The correct takeaway from the failure—for hundreds of years—of anyone to raise sovereign immunity (or any other immunity) is not that subpoena recipients were happy to cooperate, but that they had no sovereign immunity to assert.

- 50 -

In fact, *Russell* concedes at least that Chief Justice Marshall's treatment of President Jefferson gives pause. *See id.* But the court explains *Burr* away as a *criminal* procedure issue. *See id. Russell* misreads *Burr*. Before Chief Justrice Marshall concluded that Jefferson was not exempt from a judicial subpoena, he first "looked for" *any* comparable exception "in the law of evidence." 25 F. Cas. at 34. Marshall found nothing:

> In point of fact it cannot be doubted that the people of England have the same interest in the service of the executive government, that is, of the cabinet counsel, that the American people have in the service of the executive of the United States, and that their duties are as arduous and as unremitting. Yet it has never been alleged, that a subpoena might not be directed to them.

*Id.* And for much of that history Marshall considered, subpoenas issued only in *civil* cases. *See* 3 Wigmore on Evidence, *supra*, § 2190 (2d ed.); *see also id.* § 2191 (explaining that criminal compulsory process was no greater than civil).

History, along with Supreme Court precedent and constitutional structure, is conclusive—state agencies are not immune from federal judicial subpoenas.

## Conclusion

The Court should affirm.

December 1, 2023                    Respectfully submitted,


                                   By: /s/  Jason R. LaFond
                                       Jamie Alan Aycock
                                        jamieaycock@yettercoleman.com
                                       Jason R. LaFond
                                        jlafond@yettercoleman.com
                                       Ayla S. Syed
                                        asyed@yettercoleman.com

                                   **Yetter Coleman LLP**
                                   811 Main Street, Suite 4100
                                   (713) 632-8000
                                   (713) 632-8002(fax)

                                   ***Counsel for Respondent – Appellee***

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this document contains 12,901 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Equity A font.

Date:    December 1, 2023                    /s/ Jason R. LaFond
                                             JASON R. LAFOND

### Certificate of Service

I certify that this appellee's brief was filed with the Court via the court's electronic filing system, on the first day of December, 2023, and an electronic copy of the response was served on all counsel of record, as listed below, via the court's electronic filing system on the same date:

Willoughby Humphrey & D'antoni, P.A.

Robert W. Humphrey, II
  whumphrey@whdlawyers.com
Margaret McCravey O'Shields
  moshields@willoughbyhoefer.com
Hunter Ray Pope, I
  hpope@willoughbyhoefer.com
Mitchell Myron Willoughby
  mwilloughby@willoughbyhoefer.com

/s/ Jason R. LaFond

Jason R. LaFond