PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1849

In re: SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION AND TOURISM.

In re: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION, 1:21-md-3010-PKC; and STATE OF TEXAS, et al. v. GOOGLE LLC, 1:21-cv-6841-PKC.

_____

SOUTH CAROLINA DEPARTMENT OF PARKS, RECREATION AND TOURISM,

        Movant – Appellant,

  v.

GOOGLE LLC,

        Respondent – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Joseph F. Anderson, Jr., Senior District Judge. (3:23-cv-02100-JFA)

Argued: May 8, 2024                              Decided: June 5, 2024

Before AGEE and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Judge Agee wrote the opinion in which Judge Thacker and Senior Judge Traxler joined.

**ARGUED:** Robert W. Humphrey, II, WILLOUGHBY HUMPHREY & D'ANTONI P.A., Charleston, South Carolina, for Appellant.  Jason R. LaFond, YETTER COLEMAN LLP, Houston, Texas, for Appellee.  **ON BRIEF:** Mitchell Willoughby, Margaret M. O'Shields, Hunter R. Pope, WILLOUGHBY HUMPHREY & D'ANTONI, P.A., Columbia, South Carolina, for Appellant.  Jamie Alan Aycock, Ayla S. Syed, YETTER COLEMAN LLP, Houston, Texas, for Appellee.

2

AGEE, Circuit Judge:

Along with several other states, the State of South Carolina ("South Carolina" or the "State") sued Google LLC in federal court for violations of federal and state antitrust laws. With South Carolina's express approval, Google subpoenaed the South Carolina Department of Parks, Recreation and Tourism ("SCPRT") for discovery pertinent to its defense. But SCPRT refused to comply. Asserting Eleventh Amendment immunity, SCPRT moved to quash the subpoena. The district court below denied the motion, holding that any Eleventh Amendment immunity that SCPRT may have otherwise been entitled to assert was waived when the State, through its attorney general, voluntarily joined the federal lawsuit against Google. SCPRT now appeals. We affirm.

I.

Several states led by Texas sued Google in the U.S. District Court for the Eastern District of Texas for violating federal and state antitrust laws through its online display advertising business. The particulars of Google's alleged anticompetitive conduct are not relevant for purposes of this appeal. Rather, we are concerned with the undisputed conduct of a particular plaintiff: South Carolina.

After Texas and the other states filed suit, South Carolina, through its attorney general, intervened "as a plaintiff state, in the public interest and on behalf of the people of South Carolina." J.A. 480. Thereafter, the state plaintiffs filed an amended complaint naming South Carolina as a plaintiff. According to the operative complaint, all the state

3

plaintiffs, including South Carolina, "bring this action in their respective sovereign capacities and as *parens patriae* on behalf of the citizens, general welfare, and economy of their respective states." J.A. 232. And in doing so, the state plaintiffs expressly invoke federal jurisdiction. *See* J.A. 233 ("The Court has jurisdiction over this action under Sections 1, 2, and 4 of the Sherman Act, 15 U.S.C. §§ 1-2 & 4; Section[] 16 of the Clayton Act, 15 U.S.C. § 26; and under 28 U.S.C. §§ 1331, 1337, and 1407.").

Discovery commenced, and Google served document requests on the state plaintiffs through their respective attorneys general. The state plaintiffs objected to these requests, asserting that the attorneys general "do not have the authority to search for documents that are held by other state agencies or other governmental entities." J.A. 94. Google therefore served subpoenas *duces tecum* directly on the relevant state agencies, SCPRT among them, to obtain the requested documents. The state plaintiffs, including South Carolina, explicitly endorsed this course of action as the appropriate method of obtaining the discovery Google sought. In a joint letter to Google, South Carolina and the other state plaintiffs wrote: "Google issued Federal Rule 45 subpoenas to numerous state agencies, and State Plaintiffs believe that these subpoenas are the proper channels for Google to seek documents that are in the possession, custody, or control of those agencies." J.A. 94–95; *see also* J.A. 94 (the state plaintiffs averring that "[m]ost of Google's [discovery requests] target documents that are not within the possession, custody or control of State Plaintiffs and can be more easily obtained from sources that are more convenient, less burdensome, or less expensive than obtaining that information from State Attorneys General").

4

Despite South Carolina's communicated position that Rule 45 subpoenas were the "proper channels" for Google to seek documents in the possession of state agencies separate from the attorney general's office, SCPRT took a different view. When it received one of these subpoenas, SCPRT filed a motion to quash in the U.S. District Court for the District of South Carolina—the district where compliance with the subpoena is required and thus where related challenges must be brought, *see* Fed. R. Civ. P. 45(d)(3)(A)—arguing that Eleventh Amendment immunity shielded it from any obligation to comply. Although it acknowledged that the State's attorney general "may have waived a limited portion of South Carolina's sovereign immunity" by joining the federal suit against Google, SCPRT maintained that the attorney general did not and could not "waive the subpoena sovereign immunity of an agency he does not represent and over whose records he does not have custody or control." J.A. 27.

Following a hearing, the district court issued a written opinion denying SCPRT's motion. The court began by noting that it's an open question in this circuit "whether a subpoena can be considered a 'suit' for the purposes of Eleventh Amendment immunity"—that is, whether Rule 45 subpoenas trigger a state's Eleventh Amendment immunity or whether they fall outside that immunity. J.A. 162. But the court ultimately found that it was "unnecessary" to decide that issue for purposes of resolving the motion to quash. J.A. 163. Instead, the court "[a]ssum[ed] without deciding that SCPRT is entitled to Eleventh Amendment immunity" from a subpoena and held that "such immunity would have been waived by South Carolina's voluntary involvement in the underlying action pending in the Eastern District of Texas." J.A. 163. Elaborating, the court stated: "SCPRT's immunity is

5

derivative in nature. It only exists due to the immunity afforded to South Carolina and its relationship to South Carolina as a state agency. Thus, it makes little sense[] to find a state's immunity can be imputed to its agencies but not its waiver of such immunity." J.A. 164.

The district court further emphasized that Google had "initially requested the subject documents and information from South Carolina through discovery" but was told by the State (and the other state plaintiffs) that "Federal Rule 45 subpoenas are the proper channels for Google to seek documents that are in the possession, custody, or control of those agencies." J.A. 164 (cleaned up). In the court's view, "it would be fundamentally unfair to punish Google for simply following South Carolina's instruction to subpoena the requested documents because South Carolina allegedly lacks custody, control, and possession over documents within SCPRT." J.A. 164–65.

SCPRT noted a timely appeal, over which we have jurisdiction under the collateral order doctrine. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147 (1993) ("States and state entities that claim to be 'arms of the State' may take advantage of the collateral order doctrine to appeal a district court order denying a claim of Eleventh Amendment immunity.").

II.

We review a district court's order concerning "the applicability of Eleventh Amendment immunity *de novo*." *Harter v. Vernon*, 101 F.3d 334, 336–37 (4th Cir. 1996).

6

III.

This case presents two questions: (1) whether Eleventh Amendment immunity applies to Rule 45 subpoenas; and (2) assuming that it does, whether the State, by joining the federal action against Google, waived any such immunity SCPRT would have otherwise been able to assert with respect to Google's subpoena. Like the district court, we find it unnecessary to address the first question because the second question is dispositive. By joining the lawsuit against Google, the State voluntarily invoked the jurisdiction of a federal court, thereby effecting a waiver of its Eleventh Amendment immunity as to all matters arising in that suit. And because SCPRT's immunity derives solely from that of the State, South Carolina's waiver of Eleventh Amendment immunity equally effected a waiver of SCPRT's immunity. The district court therefore properly denied SCPRT's motion to quash.

A.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As construed by the Supreme Court, this Amendment "confirmed . . . state sovereign immunity as a constitutional principle." *Alden v. Maine*, 527 U.S. 706, 728–29 (1999). Under that principle, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). And this immunity extends not just to the state, but also "to state agencies and other government

7

entities properly characterized as arms of the State." *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (cleaned up).

Importantly, however, "[t]he Eleventh Amendment bar to suit is not absolute." *Feeney*, 495 U.S. at 304. Relevant here, a state waives its Eleventh Amendment immunity when it "voluntarily invoke[s] the jurisdiction of [a] federal court." *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 622 (2002) (emphasis omitted). And such a waiver, long-standing Supreme Court precedent holds, is irrevocable: "[W]here a state voluntarily become[s] a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment." *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906); *accord Porto Rico v. Ramos*, 232 U.S. 627, 632 (1914) ("[T]he immunity of sovereignty from suit without its consent cannot be carried so far as to permit it to reverse the action invoked by it, and to come in and go out of court at its will, the other party having no right of resistance to either step.").

With these principles in mind, we consider the case at bar.

B.

There is no dispute that SCPRT is an arm of the State and is thus ordinarily entitled to share in South Carolina's Eleventh Amendment immunity. But the parties disagree as to the impact of the attorney general's litigation conduct in adding the State as a plaintiff to the federal lawsuit against Google.

According to SCPRT, because the attorney general "does not represent SCPRT or have custody, possession, or control over its records," and because he "did not bring his

8

claims against Google in a sovereign capacity," his joining the State to the litigation against Google could not have waived the Eleventh Amendment immunity of SCPRT, which is a "statutorily and constitutionally separate" state agency. Opening Br. 20, 33.

Google responds that by exercising his litigation control over the State, the attorney general caused South Carolina to make a "general appearance in litigation in a federal court," resulting in a waiver of the State's Eleventh Amendment immunity for purposes of that litigation. Response Br. 8 (cleaned up). And because of that waiver, Google continues, no immunity "is left for [the State's] arms," including SCPRT. Response Br. 10.

We agree with Google.

In *Lapides*, the Supreme Court made clear that a state waives its Eleventh Amendment immunity "when [its] attorney general, authorized . . . to bring a case in federal court, has voluntarily invoked that court's jurisdiction." 535 U.S. at 622. That is precisely what happened here. South Carolina's attorney general, who is indisputably authorized to bring a case on behalf of the State in federal court, invoked the jurisdiction of a federal court by intervening in the antitrust action against Google. That act, *Lapides* teaches, effected a waiver of the State's Eleventh Amendment immunity.

So what does this mean for SCPRT? We think Google summarized it well: "As South Carolina goes, so goes [SCPRT]." Response Br. 9. As an arm of the State, SCPRT enjoys no independent immunity. Rather, its immunity derives solely from the State, the sovereign to whom the immunity belongs. *See Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2001) (stating that "state agents and state instrumentalities . . . partake of the *State's* Eleventh Amendment immunity" (emphasis added)); *see also Va. Off.*

9

*for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011) ("Our cases hold that the *States* have retained their traditional immunity from suit[.]" (emphasis added))). And if an arm of a state enjoys Eleventh Amendment immunity only by virtue of its relation to the state, it necessarily follows that when the state waives its immunity, then there no longer remains any immunity that the arm may assert. Put simply, the arm *is* the state, and the state is the arm. *Cf. Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 542 (4th Cir. 2014) ("The Eleventh Amendment shields a state entity from suit in federal court if, in the entity's operations, the state is the real party in interest, in the sense that the named party is the alter ego of the state." (cleaned up)); *Ristow v. S.C. Ports Auth.*, 58 F.3d 1051, 1053, 1055 (4th Cir. 1995) ("[T]he Ports Authority, from an Eleventh Amendment perspective, is the alter ego of the State of South Carolina" and thus "is entitled to Eleventh Amendment immunity from suit."). Accordingly, when the State waived its immunity by voluntarily joining the suit against Google, it "nullified" any immunity defense that any of its arms, including SCPRT, could have otherwise asserted. *Owen v. City of Independence*, 445 U.S. 622, 645–46 (1980) (stating that "the principle of sovereign immunity . . . is necessarily nullified when the State expressly or impliedly allows itself, or its creation, to be sued").

South Carolina's own litigation conduct in this case reflects a recognition of that fact. After Google's unsuccessful attempts to obtain discovery from the State's attorney general, South Carolina expressly endorsed Google's alternative course of serving Rule 45 subpoenas directly on the state agencies in possession of the relevant documents, including SCPRT: "Google issued Federal Rule 45 subpoenas to numerous state agencies, and *State Plaintiffs believe that these subpoenas are the proper channels* for Google to seek

10

documents that are in the possession, custody, or control of those agencies." J.A. 94–95 (emphasis added); *see also* J.A. 94 ("Most of Google's [discovery requests] target documents that are not within the possession, custody or control of State Plaintiffs and can be more easily obtained from sources that are more convenient, less burdensome, or less expensive than obtaining that information from State Attorneys General.").[1] As the district court recognized, it would be "fundamentally unfair" to Google, J.A. 164, to permit SCPRT to invoke Eleventh Amendment immunity in response to a subpoena that the State itself told Google was "the proper channel[]" for seeking documents pertinent to the company's defense, J.A. 95—a defense Google is forced to mount because of claims that South Carolina brought against it in federal court. *See Lapides*, 535 U.S. at 620 (observing "the [Eleventh] Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and *unfairness*," which might include a state's "selective use of 'immunity' to achieve litigation advantages" (emphasis added)); *Ramos*, 232 U.S. at 632 (stating that "the immunity of sovereignty from suit without its consent cannot be carried so far as to permit it to reverse the action invoked by it, and to come in and go out of court at its will, *the other party having no right of resistance to either step*" (emphasis added)); *cf. In re Creative Goldsmiths of Wash., D.C., Inc.*, 119 F.3d 1140, 1148 (4th Cir. 1997) ("[I]t would violate the *fundamental fairness of judicial process* to allow a state to proceed in federal court and

---

[1] Notably, one other South Carolina agency—the South Carolina Department of Social Services—was subpoenaed, and unlike SCPRT, it voluntarily complied by producing the responsive documents.

11

at the same time strip the defendant of valid defenses because they might be construed to be affirmative claims against the state." (emphasis added)).[2]

SCPRT's arguments urging a different result are unavailing. SCPRT stresses that under South Carolina state law, the attorney general "does not represent" SCPRT—a distinct state agency—or have custody or control of its records. Opening Br. 24. That being so, SCPRT contends, the attorney general "cannot waive [SCPRT's] sovereign immunity from being compelled to produce records in federal court." Opening Br. 24. But that claim rests on a false premise. Under *Lapides*, "whether a particular [state action] amounts to a waiver of the State's Eleventh Amendment immunity is a question of *federal* law," not state law. 535 U.S. at 623 (emphasis added). On that score, *Lapides* set forth a bright-line rule: a state waives its Eleventh Amendment immunity "when [its] attorney general, authorized (as here) to bring a case in federal court, has voluntarily invoked that court's jurisdiction." *Id.* at 622.[3] Thus, it does not matter whether the attorney general "represents" SCPRT or

---

[2] We should emphasize, however, that our conclusion would remain the same even if the state plaintiffs had not explicitly endorsed directing subpoenas to individual state agencies. As we have explained, South Carolina's decision to intervene as a plaintiff in the federal lawsuit against Google was sufficient, in and of itself, to waive the state's Eleventh Amendment immunity.

[3] In its reply brief and at oral argument, SCPRT argued that *Lapides*' holding is limited to its facts—that is, when a state invokes federal jurisdiction by removing a case against it from state court to federal court. *See* 535 U.S. at 616–17. We disagree. The Court's opinion in that case clearly stated that its decision was an application of the "general principle" that a state's invocation of federal jurisdiction constitutes a waiver of Eleventh Amendment immunity, regardless of the form that invocation might take. *Id.* at 620; *see also id.* at 624 (stating that "removal is a *form* of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter . . . in a federal forum" (emphasis added)).

12

has custody of its records. He represents the *State*. And in that capacity, he caused the *State* to become a party to the action against Google, thereby invoking a federal court's jurisdiction and waiving the *State's* sovereign immunity.[4] As a result of that unconditional waiver, there is no immunity left for SCPRT to assert.

The district court therefore properly denied SCPRT's motion to quash.

## IV.

Our holding today reflects a straightforward application of basic Eleventh Amendment principles. When South Carolina, through its attorney general, joined the action against Google, it voluntarily invoked federal jurisdiction. That invocation, Supreme Court precedent plainly instructs, resulted in a complete and irrevocable waiver of the State's Eleventh Amendment immunity as to all matters arising in that lawsuit, including the State-endorsed Rule 45 subpoena issued to SCPRT.

The district court's order is

*AFIRMED*.

---

[4] Despite SCPRT's assertions, we think it immaterial whether the attorney general brought the claims "in a sovereign capacity" or "in his non-sovereign *parens patriae* role." Opening Br. 20, 30. *Lapides* drew no such distinction, and we see no basis to do so here. Nor do we accept SCPRT's related claim that the attorney general waived only *some* of the State's immunity and specifically *not* the portion that purportedly belongs exclusively to SCPRT. *See* Opening Br. 31–32 (stating that "[e]ach state agency may choose whether to remove the cloak of Eleventh Amendment immunity" and that one state agency's ability "to waive the Eleventh Amendment immunity of another" is "strictly circumscribe[d]" (cleaned up)). SCPRT provides no persuasive, let alone binding, authority supporting that kind of piecemeal approach to a state's Eleventh Amendment immunity. To the contrary, as historically understood, Eleventh Amendment immunity is an all-or-nothing affair. *Cf. Lapides*, 535 U.S. at 620–23; *Ramos*, 232 U.S. at 632; *Gunter*, 200 U.S. at 284.